Elmer TAYLOR et al., Appellants,

v.

Wendell BENTON et al., Appellees.

No. 3977.

Court of Civil Appeals of Texas.

Eastland.

April 30, 1965.

Alton M. Reeder, Amarillo, for appellants.

Folley, Snodgrass, Calhoun & Kolius, Amarillo, for appellees.

WALTER, Justice.

Wendell Benton and wife Mary Benton filed a trespass to try title suit against Elmer Taylor and Armstrong County. Buena V. Eubanks filed a trespass to try title suit against R. W. Tevebaugh and wife Billie Tevebaugh and Armstrong County. By agreement, the cases were consolidated for trial. The court instructed a verdict in favor of the county against the Bentons. The county disclaimed as to Eubanks. The court instructed a verdict in favor of the plaintiffs Wendell Benton and wife against the defendant Elmer Taylor and in favor of the plaintiff Eubanks against the defendant R. W. Tevebaugh and wife. No appeal has been perfected from the judgment in favor of the county. The defendants Taylor and Tevebaugh have appealed. The parties will be referred to as they were designated in the trial court.

The parties stipulated as follows:

"Wendell Benton and wife, Mary Benton, acquired the title to the southwest quarter (SW¼) of section 315, Block B–4, H&GN Ry. Co. Survey, in Armstrong County, by deed dated October 10, 1946—; that Wendell Benton and wife acquired title to the southeast quarter (SE¼) of said section 315, by deed dated the 15th day of October, 1946.

"It is further stipulated that prior to the institution of the proceedings of Mrs. B. V. Eubanks to open a road between said section 315 and 4, on June 1, 1960, that Elmer Taylor was the record owner of the north half (N½) of section 4, block 4, BS&F, situated in Armstrong County, Texas; that Mrs. B. V. Eubanks was the record owner of section 316, block B–4, H&GN Ry. Co., in Armstrong County, Texas; and that R. W. Tevebaugh was the record owner of section 5, block 4, BS&F Ry. Co. Survey, in Armstrong County, Texas."

"The parties hereby stipulated that the roadway as now located, graded and maintained by Armstrong County, lies thirty (30) feet on each side of the true survey line between said sections 315, block B–4, H&GN Ry. Co., and section 4, block 4, BS&F survey, that the true and correct survey line between said section 315 and said section 4, is that line which was established by the survey made by Howard T. Trigg on April 10, 1961; that said survey is the center line of the presently located and graded road."

The Trigg survey shows that section 315 owned by plaintiff, Wendell Benton, is located north of section 4 owned by defendant, Taylor, and section 316 owned by plaintiff, Buena V. Eubanks, is located north of section 5 owned by defendant Tevebaugh. About six acres of land off of the north side of sections 4 and 5 are involved in these lawsuits.

The defendants contend that there was no evidence that the plaintiffs or their predecessors in title had been in continuous and uninterrupted adverse possession of the land for any ten or twenty five years period. The plaintiffs contend the evidence conclusively shows that they satisfied all the requirements of the ten and twenty five year statute of limitations.

Mrs. Buena V. Eubanks testified substantially as follows:

I came with my mother and stepfather to this county in 1905 when my mother purchased sections 315 and 316; at such time there was a fence line to the south of these two sections; in about 1940 or 1941 my mother passed away and in dividing the estate I acquired the west half of section 316; about forty years ago I purchased the east half of the section from Wendell Benton; I have owned section 316 since that time; I have farmed the west half, the east half is in grass and I have "pastured that"; I have claimed this land since I acquired it; I have also leased it; the entire section is leased now and I am collecting the money on the lease; in 1959 I signed a petition to open a road, the center of the road to be the south line of sections 315 and 316; I own the east half of the fence but I have never had any agreement with Tevebaugh about it; the south part of the west part of the section 316 is in cultivation; it is cultivated up to the fence line; the east side of the section is now leased to Tommie Todd and the cultivated land to Dalton Dye; I am paying taxes on this property, but not on Tevebaugh's section.

I am familiar with section 315 and the old fence line to the south of the section between Mr. Taylor and Mr. Benton; that fence had been there since 1905 until it was moved recently by the county; section 315 has been in cultivation but a part of it is in the Soil Bank now; I have never had this land surveyed; the first time I knew where the true section line was located was after the Trigg survey; that on the 1st day of October, 1959, I petitioned the county to open a public road beginning at the southwest corner of section 315 and the

northwest corner of section 4; the road was to extend east and the center line of the road "to be the south line of section 315 and 316; I petitioned the county to open the road on the section line;"

"Q. Were you claiming the land, any of the land, on the south side of the road that you petitioned to be opened?

"A. No."

On June 1, 1960, I signed another petition to the Commissioner's Court to open a road which is Tevebaugh and Taylor Exhibit No. 2; this calls for a road from the southwest corner of section 315 and the northwest corner of section 4; the center line of the road to be the south line of section 315 and 316; at the time I signed this petition, I recognized that the true section line was where the road was to be constructed;

"Q. And you were not claiming any land that would lie south of that road, if and when it was opened, would you, Mrs. Eubanks?

"A. No, sir."

Benson Eubanks testified substantially as follows:

Mrs. Buena V. Eubanks is my mother; I have lived in Claude all my life; I am familiar with the fence line between these sections; Howard Trigg made a survey and the road was actually built thirty feet on either side of the section line.

Mrs. Wendell Benton testified substantially as follows:

My husband's father owned section 315 from 1905 until he died and then we acquired it; I have been familiar with the old fence between us and Mr. Taylor since I married Mr. Benton; we farmed the land up to the fence line ever since I have been married to Mr. Benton; the fence has been there continuously all during that time; I don't know if Mr. Taylor owned half of the fence or not and I don't know whether we own the fence or not; "Q. Well, I will put

it this way—as far as you know, it was not Mr. Benton's intention to claim any land on the south side of that road after it was opened? A. No, he didn't want anybody's land; we just wanted ours up to the fence."

Wendell Benton's name appears on an exhibit which was a notice of a petition to open a road. The notice designates the road as beginning at the southwest corner of section 315 and the northwest corner of section 4 and extending east for a mile, the center line of the road to be the south line of section 315 and 316.

■ When we review an instructed verdict, we must consider the evidence most favorable in behalf of the party against whom the verdict is instructed. Air Conditioning, Inc. v. Harrison-Wilson-Pearson, 151 Tex. 635, 253 S.W.2d 422.

■ The general rule is that the testimony of interested witnesses does no more than raise fact issues. James T. Taylor, Etc. v. Arlington Independent School District (Sup.Ct.), 335 S.W.2d 371. "Stated in another form, the rule is that the uncontradicted, uncorroborated testimony of a party to a suit will not authorize or support an instructed verdict." Simmonds v. St. Louis B. & M. Ry. Co. (Com.App.), 127 Tex. 23, 91 S.W.2d 332.

■ In Cook v. Winter, Tex.Civ.App., 207 S.W.2d 145 (Writ Ref. N.R.E.), at page 149 the court said:

"A person claiming title to land by virtue of ten year adverse possession has the burden of proving ten consecutive years of peaceable adverse possession and that he cultivated, used or enjoyed the same during that period of time and the proof must be clear and satisfactory. Moore v. Wooten, Tex.Com. App., 280 S.W. 742; West v. Mora, Tex.Civ.App., 138 S.W.2d 600. Presumptions to establish such a claim will not be indulged but such a claimant has the burden of proving every necessary or essential fact, in connection with his

possession and claim, which go to make up or give him title by limitation."

When we consider the fact that the witnesses were interested parties and the further fact that Mrs. Eubanks testified that she had no intention to claim any land south of the road which she had petitioned the county to construct and the further fact that Mrs. Benton testified that it was not her husband's intention to claim any land south of the road which Mr. Benton had petitioned the county to construct, we are compelled to hold that the record does not show that the plaintiffs have conclusively established their title by limitations. Moreover, the record does not show that the court instructed a verdict on the limitations issue. The court said: "I think I will grant plaintiffs' motion for instructed verdict, since I think the testimony shows without question that all parties involved in this law suit accepted the fence as the boundary line for many, many years. So, I instruct a verdict on behalf of the plaintiffs."

■■ We will now consider the boundary issue. We find no merit in plaintiffs' contention that the instructed verdict was proper because by recognition and acquiescence the old fence was established as the boundary line. Our Supreme Court in the case of Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59, 152 S.W.2d 711, 714, said:

"The rules with respect to the establishment of boundary by agreement are well settled by the decisions in this state and by other authorities. There is no real difference about them in the briefs of the parties to this suit. They may be stated generally and briefly as follows: When there is uncertainty, doubt or dispute as to where the true division line between the lands of the parties may be, they may fix it by parol agreement, which will be mutually binding upon them, even though they were mistaken as to the true location of the line. This is true whether the mistake be of a matter of fact or of law. The existence of uncertainty, doubt or dispute is essential to the validity of such agreement. Actual dispute, however, between the parties is not necessary. It is enough that the location of the line had not been definitely established and is doubtful or uncertain."

In the case of Boothe v. Fuentes, Tex.Civ. App., 262 S.W.2d 754, 755 (No Writ His.), the court said:

"As we understand the doctrine of boundary by acquiescence, it must be shown that there was some uncertainty as to the true boundary, which resulted in a line being established (generally by a fence), and that thereafter the adjoining land owners acquiesced in and recognized this line as the true boundary line between them. The mere erection of a fence off the boundary line is not in itself sufficient to make the doctrine applicable."

In Strayhorn v. Jones, (Sup.Ct.), 157 Tex. 136, 300 S.W.2d 623, 633, the court said:

"The facts regarding the boundaries were undisputed. The jury finding that no doubt or uncertainty existed and that there was no agreement 'by words' as to the fences being the boundary shows there was no dispute or uncertainty as to the true boundary. At best, the jury findings show only an acquiescence in the boundary as shown by the fences built. The correct boundary was a question of law."

"The case of Great Plains Oil & Gas Co. v. Foundation Oil Co., 1941, 137 Tex. 324, 153 S.W.2d 452, 458, discusses fixing boundary lines by acquiescence. The rule is stated as follows:

"'* * * But acquiescence in a line other than the true line will not support a finding of an agreement establishing the line as the boundary when there is no other evidence of agreement than

acquiescence and when it is affirmatively shown that the use of the line resulted not from agreement but from a mistaken belief of the parties that it was the true line. Stier v. Latreyte, Tex.Civ.App., 50 S.W. 589; Hunter v. Malone, 49 Tex.Civ.App., 116, 108 S. W. 709; Gulf Oil Corporation v. Marathon Oil Company, 137 Tex. 59, 152 S. W.2d 711. Similarly, when the true location of the line is conclusively proven, mere acquiescence in another line in the mistaken belief that it is the true line will not support a finding that such other line is the true line. Buie v. Miller, Tex.Civ.App., 216 S.W. 630 (Application for writ of error refused); Thompson v. Allen, Tex.Civ. App., 111 S.W.2d 791.' "

We have concluded that the court was not warranted in instructing a verdict for the plaintiffs on the boundary issue.

The judgment is reversed and the cause is remanded.