H. K. HUIE, Jr., Appellant,

v.

LONE STAR AIR CONDITIONING COMPANY, Appellee.

No. 5168.

Court of Civil Appeals of Texas, Waco.

Oct. 19, 1972.

Rehearing Denied Nov. 9, 1972.

Turner, Rodgers, Winn, Scurlock & Sailers, John H. McElhaney, Dallas, for appellant.

Strasburger, Price, Kelton, Martin & Unis, John H. Marks, Jr., Dallas, for appellee.

HALL, Justice.

The plaintiff, H. K. Huie, Jr., is the owner-builder of a 300-unit apartment complex. He contracted with the defendant, Lone Star Air-Conditioning Company, for the installation of air-conditioning equipment in the apartments. He brought this action for fire damage to a building containing three of the apartments.

Plaintiff alleged that the negligent use of a blowtorch "too near to combustible material" by defendant's servant while making repairs to the air-conditioning equipment was a proximate cause of the fire. Defendant answered with a general denial and specially pleaded (1) that plaintiff's negligence was the cause of the fire; (2) that "actions, omissions, and conduct of others" was the sole cause of the fire; and (3) unavoidable accident.

Basing its motion upon the pleadings, affidavits and depositions of record, defendant moved for summary judgment, asserting a "lack of any evidence that would indicate that anyone from Lone Star Air-Conditioning might have started the fire" and a want of any genuine issue of material fact in the case. The motion was granted and judgment was rendered that plaintiff take nothing. In his single point of error, plaintiff asserts the record does not support the judgment. We reverse and remand.

In a summary judgment proceeding the burden of proof is on the movant. Great American R. Ins. Co. v. San Antonio Pl. Sup. Co. (Tex.Sup., 1965) 391 S. W.2d 41, 47. He must establish his right thereto as a matter of law by showing that there is no genuine issue of material fact as to one or more of the essential elements of plaintiff's cause of action or defendant's defense. Farley v. Prudential Insurance Company (Tex.Sup., 1972) 480 S. W.2d 176, 178. In deciding whether or not a summary judgment is proper, any evidentiary conflicts in the record are disregarded and the proof which tends to

support the position of the party opposing the motion is accepted as true. Parrott v. Garcia (Tex.Sup., 1969) 436 S.W.2d 897, 899. Thus, in order to prevail on its motion for summary judgment, a defendant is required to conclusively disprove the plaintiff's cause of action or it must establish one or more of its defenses as a matter of law. Adam Dante Corporation v. Sharpe (Tex.Sup., 1972) 483 S.W.2d 452, 455.

The record shows that the fire upon which this suit is based was discovered between 11:00 A.M. and noon on October 8, 1969. The fire originated in a wall between two bathrooms. Mack Earl Martin, an employee of defendant, was in the building approximately 24 hours before the fire was discovered. At that time he was, in the course of his employment, repairing a leak in a pipe coupling in the air-conditioning equipment in the wall between the baths. Martin's testimony shows that in order to gain access to the leaking pipe, he was required to cut and break a hole eight inches wide and twelve inches high through sheet rock and a flammable material known as "beaverboard"; that the pipes have "armaflex insulation—just rubber to me is what it is"; that he "stripped back" the insulation and found the leaking pipe coupling and used his blowtorch to heat the coupling to solder it; that the torch he used would shoot a flame "maybe two inches beyond the pipe"; that the wall in which he was working was not more than six inches thick and may have been a four-inch wall; that after repairing the leak, he splashed water from a nearby commode onto the coupling to cool it; that when he finished the job he "saw no sparks or smoke or smoldering or anything to indicate that there was a fire or anything that could start a fire in the area where he had done his work"; that "he did not start a fire"; that the morning of the following day, about three hours before discovery of the fire, he returned to the building and inspected his repair work, at which time there was no smoke in the area and he did not see or smell anything which would indicate "that there might be a smoldering fire or any other kind of fire in the area"; and that he did not use his torch on the morning of discovery of the fire. Martin knew of no other who used a torch in the building during "the previous few days" before the fire, and the record does not show that another did so.

Without dispute in the record, the fire started "at the hole in the wall" where Martin repaired the pipe. Martin stated that when making such repairs "the first thing is to clear everything out away from your pipe that can be moved that you can put back without tearing it up. * * * You naturally want to push (insulation) out of the way or pull it completely out. And just anything that's combustible, you want to get away from the pipe. You know how far the flame is going to shoot, and you want to try to get stuff away from it that far. And we always try to do that. Sometimes you can't." He said that under the circumstances it is "fairly easy" to accidentally start a fire with a torch; that "naturally, when we are around wood like that, it's going to happen." He stated, "I might have started three fires that were the kind that I had to have a fire extinguisher to put out, or water. Generally, it's just blow—you just blow it out"; and that he had started "numerous" such fires that he "just had to blow out."

In Huie's words, he was his "own contractor * * * the builder, the owner, the developer and the whole thing," and did his "own carpentry work" on the complex. He testified that at the time of the fire, the three apartments in the building in question were ready for carpets to be laid and that "virtually everything else was done in the building"; that "virtually no work was going on inside" * * * and there really hadn't been hardly anyone * * * in that building" in a "few-day period" prior to the fire; that the pipe repaired by Martin was "just a vertical copper pipe" and that "all copper lines in all cases are right next to wood"; that the wall between the baths where Mar-

tin was working was made of "celotex material" which is "highly inflammable"; that the torch in question is "a little propane torch" which shoots a flame "three or four inches, two or three inches" and is "awfully hot"; that the insulation used on the pipe repaired by Martin was "a material that will catch on fire and smolder and might break out into flames at some later time. * * * It's an inflammable substance, .but it smolders and eventually breaks out in flames."

Robert K. Brown, defendant's president, testified that where the copper piping comes up through the concrete slab it penetrates a wooden plate, and that Martin's repair of the pipe was about six inches above the surface of the slab.

Foy Edmond Hodnett is plaintiff's carpenter foreman. He testified that there was a "sound-proofing board" in the wall in question. He said, "It's a smoldering board. It won't go out if it catches fire unless it's put out with water, or some such."

William F. Harkey, defendant's pipe foreman and Martin's immediate supervisor testified as follows: "Q. What type of procedures do you tell your men to follow when they use a torch on a job like we had here? A. Just be as careful as they can. Q. Why is that? A. Well, you know, such stuff as this. And be sure they have a fire extinguisher with them at all times. Q. That's because a torch is hot and starts fires? A. Yeah."

J. C. Cooper testified by affidavit that he is, and has been for six years, an arson investigator for the Fire Department of The City of Dallas, that he has investigated more than 250 fires per year to determine their causes; and that he investigated the fire in question. He said, "Assuming that the apartment unit was virtually completed; that a torch had been used by Lone Star Air-Conditioning Company approximately 24 hours before the fire was discovered, that the torch had been used in work which had been done on the wall in which the fire started (and that no arson was involved and in this regard I found no evidence of arson) ; in my opinion the cause of the fire was the torch used by Lone Star Air-Conditioning Company."

The record does not conclusively establish any of defendant's special defenses, and there is no contention by defendant that it does. Consequently, the single question left for decision is whether or not the summary judgment proof refutes plaintiff's cause of action as a matter of law. We hold that it does not.

In our opinion the evidence we have recited is circumstantially sufficient to raise fact questions as to whether the negligent use of a blowtorch by Martin caused the fire. Negligence and causation, like any ultimate fact, may be established by circumstantial as well as direct evidence. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 275 (1958).

Moreover, the record shows that Martin is the only available witness who knows exactly how he handled and used the torch. He is an interested witness. City of Waco v. Branch (Tex.Civ.App., 1928, writ ref.) 8 S.W.2d 271, 274. It is not within the ability of plaintiff to directly dispute what Martin says he did or did not do. In James T. Taylor and Son, Inc. v. Arlington Ind. School Dist., 160 Tex. 617, 335 S.W.2d 371, 376 (1960), the court said:

"The general rule is that the testimony of an interested witness does no more than raise a fact issue to be determined by the jury. While there are exceptions to the rule, it seems settled that when testimony comes from an interested party and is of such a nature that it cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented."

We believe this rule bears application in this case.

The judgment is reversed and this cause is remanded to the trial court.