Franklin R. NAVARRO, Appellant,

v.

Ollie B. COLLORA et al., Appellees.

No. 1223.

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 28, 1978.

Rehearing Denied April 20, 1978.

Dale Harvill, Harvill & Hardy, Michael W. Melton, Joel W. Cook, Schlanger, Cook, Cohn & Mills, Houston, for appellant.

Houston Munson, Thomas K. Robinson, Gonzales, Don Blansitt, Schulenburg, for appellees.

## OPINION

BISSETT, Justice.

The opinion of this Court is this case heretofore rendered and filed on December 29, 1977 is withdrawn and this opinion is substituted therefor.

This is an instructed verdict case. Ollie B. Collora sued Franklin R. Navarro for partition of a 68.5 acre tract of land located in Lavaca County, Texas. Her petition was filed on January 7, 1971 in the District Court of Lavaca County, Texas. Josephine Constance Collora, Frank Dominick Collora and Joseph M. Collora, Jr., minor children of the plaintiff Ollie B. Collora and her former husband Joseph Michael Collora, from whom she was divorced in 1959 and who died testate in 1968, acting by and through Charles Frank Mustachia and Frances Mustachia, testamentary trustees of the Estate of Joseph Michael Collora, Deceased, intervened and asked that the defendant be required to assign his interest in the land "to the JOSEPH COLLORA ESTATE". The petition in intervention was filed on March 16, 1973.

Trial before a jury commenced on January 12, 1976. After all parties had rested,

the plaintiff and the intervenors each filed a motion for an instructed verdict. Both motions were granted and judgment was rendered on October 20, 1976. Franklin R. Navarro, the defendant, has appealed. We reverse and remand.

The parties will be referred to either by name, or as "plaintiff", "intervenors", and "defendants", as they were in the trial court. "Joseph Michael Collora" and "Joe M. Collora" are one and the same person.

The judgment contained the following findings of fact:

(1) a valid marriage existed between the plaintiff and Joseph M. Collora prior to the purchase of the 68.5 acre tract by Joseph M. Collora through the Veterans Land Board;

(2) the Court of Domestic Relations of Harris County, Texas, entered a judgment which set aside an undivided one-half interest in the 68.5 acre tract to the plaintiff Ollie B. Collora;

The judgment decreed:

(1) the plaintiff recover from the defendant "the title to and possession of an undivided one-half interest" in the 68.5 acre tract;

(2) the intervenors recover from the defendant "the title and possession of an undivided one-half interest in and to the same property"; and,

(3) the plaintiff and the intervenors "shall have their writ of possession for said property".

Defendant brings forward four points of error. Two points (1 and 2) are directed at the judgment in favor of the plaintiff, and the other two points (3 and 4) are directed at the judgment in favor of the intervenors. He contends that the trial court erred in granting the motions for instructed verdict on the grounds: 1) "the evidence adduced at the trial raised significant issues of fact"; and 2) the evidence supporting each motion "was not conclusive".

The circumstances which entitle a litigant to an instructed verdict are clearly set out in 56 Tex.Jur.2d, Trial § 206 (1964), as follows:

"A motion for an instructed verdict will be granted where no issue of fact is presented by the evidence, where only the legal effect of evidence is involved, where the facts are properly pleaded and indisputably proved, where no verdict other than the one requested could properly be sustained, or where reasonable minds could draw only one inference from the evidence."

In reviewing an instructed verdict case, an appellant court must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed and must disregard all conflicting evidence. *Echols v. Wells*, 510 S.W.2d 916 (Tex.Sup.1974); *Seideneck v. Cal Bayreuther Associates*, 451 S.W.2d 752 (Tex.Sup. 1970); *State Highway Department v. Hinson*, 517 S.W.2d 308 (Tex.Civ.App.—Corpus Christi 1974, writ ref'd n. r. e.). When reasonable minds may differ as to the truth of controlling facts, an issue for the trier of facts is presented. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (Tex.Sup.1948).

In late 1948 or the first part of 1949, Joe M. Collora and the plaintiff became interested in purchasing land under the Texas Veterans' Land Board Program. They located a 68.5 acre tract of land which is the subject matter of this suit, and a contract of sale and purchase, hereinafter called the "contract", was signed on January 17, 1950, by the Veterans' Land Board, as seller, and by Joe M. Collora, as purchaser. It provided for the purchase of said land by Joe M. Collora for the total consideration of $7,000.00, payable $350.00 down and the remainder in semi-annual installments ($143.30) over a period not to exceed 40 years, with interest thereon at the rate of 3% per annum.

Joe M. Collora and the plaintiff were divorced by the Court of Domestic Relations of Harris County, Texas, on December 15, 1959. The contract was outstanding and in force and effect at that time.

Joe M. Collora, by deed dated January 3, 1962, purported to convey *all* of the subject land to the Camille Corporation, and by

assignment dated January 10, 1962, purported to assign the contract covering said land to the Camille Corporation. The assignment was approved by the Veterans' Land Board. Thereafter, the Camille Corporation, by deed dated May 27, 1965, purported to convey *all* of the 68.5 acre tract to the defendant. The record does not reveal that this assignment was approved by the Veterans' Land Board.

Joe M. Collora died in 1968, and was survived by three children, the intervenors herein. Joe M. Collora did not himself seek to set aside the assignment and conveyance to the Camille Corporation, nor did he attack the conveyance to the defendant on any ground.

The land in question was purchased by the Veterans' Land Board by deed dated January 23, 1950. There is no evidence that the Board has ever executed and delivered a deed to the land to anyone. It is also established by the evidence that at the time of the assignment of the contract and the execution of the deed by Joe M. Collora to the Camille Corporation that the land was reasonably worth $23,000.00 and that the balance then due the Veterans' Land Board on the original purchase price was approximately $5,500.00. Camille Corporation paid all installments due the Veterans' Land Board from January 3, 1962 until May 27, 1965. Apparently all installments due subsequent to May 27, 1965 had been paid by the defendant.

The evidence does not justify, authorize or permit a partition of the land between the parties to this lawsuit. The most that could be accomplished is an adjustment of equities, if any, between the parties.

The judgment of the trial court, which is now before this Court in this appeal, did not "partition" the land, as prayed for by the plaintiff, and did not order the defendant "to reassign the contract of sale to the JOSEPH COLLORA ESTATE", as prayed for by the intervenors. In effect, the judgment decreed, in part, that the plaintiff and the intervenors each recover from the defendant "the title" to an undivided one-half interest in the land involved despite the

fact that the apparent record *title* to the land was in the Veterans' Land Board, who was not a party to the suit. However, the defendant does not attack the judgment on those grounds, and the record reveals that all parties tried the issue of *title* to the land as if the only parties who owned the land and the title thereto were the plaintiff, the intervenors and the defendant. No exception was directed by the defendant to the substance of the plaintiff's and the intervenors' petitions and no contention was voiced by the defendant that the title to the land involved was in the Veterans' Land Board at all times pertinent to this suit. In view of our decision to reverse the judgment and to remand the cause to the trial court, we do not further discuss the variance between the pleadings, the evidence, and the judgment, nor do we pass upon the question of whether the trial judge was authorized to invest *title* to the land in the plaintiff and in the intervenors, as was done in this case.

## THE APPEAL OF THE JUDGMENT FAVORABLE TO PLAINTIFF

■ The controlling issue in the controversy between the plaintiff and the defendant is whether the plaintiff and Joe M. Collora were validly married under the common law prior to January 17, 1950, when the contract was signed. The defendant first claims that there was "no admissible evidence" to prove the existence of a common law marriage. He argues that the trial court erred in permitting the plaintiff to testify that in April, 1949 she and Joe M. Collora agreed to be married because such testimony was not admissible, over his objection, because it was in violation of Tex. Rev.Stat.Ann. art. 3716 (1926), commonly called the "Dead Man's Statute". We do not agree. Neither the plaintiff nor the defendant were in court in the capacity of either an heir of Joe M. Collora, Deceased, or as a legal representative of his estate. The interest in the property claimed by the plaintiff is an interest which is severable from the interest asserted by the intervenors, and neither interest infringes in any manner upon the other. The plaintiff does

not sue in a dual capacity wherein the rights asserted by her are inseparable from the rights asserted by an heir of a decedent or by a legal representative of the estate of a decedent. See *Pugh v. Turner*, 145 Tex. 292, 197 S.W.2d 822 (1946); *Fuston v. Wilson*, 144 Tex. 588, 192 S.W.2d 444 (1946). The testimony was admissible in evidence.

The defendant next argues that a common law marriage was not established by conclusive evidence. We agree.

■ In order for a valid common law marriage to come into existence, all of the following prerequisites must be met: 1) a present agreement to be husband and wife, 2) living together as husband and wife, and 3) a holding of each other out to the public as husband and wife. *Humphreys v. Humphreys*, 364 S.W.2d 177 (Tex.Sup.1963).

The plaintiff testified that from 1947 until early 1949, Joe M. Collora dated her on a "steady basis", and in April, 1949, the two "agreed to a marriage"; and that they then moved into his mother's home where they lived until either late 1949, or until February 11, 1950, when she and Joe M. Collora "confirmed our marriage". She further testified that she and Joe did not go through a marriage ceremony during the time that they lived with Joe's mother because there were difficulties in that Joe's mother was a "very devout Catholic", and she (plaintiff) was a "Protestant".

The plaintiff stated, without contradiction, that from April, 1949 until the time that she and Joe were divorced that they lived and cohabited together; maintained a household; and Joe always introduced her to others as "his wife" or as "Mrs. Collora". Numerous witnesses corroborated this testimony by the plaintiff. The witnesses testified, in summary, that each first became acquainted with the plaintiff sometime in 1949; that she and Joe were living together at that time; that Joe introduced the plaintiff to them as "his wife"; that they introduced Joe and the plaintiff to others as husband and wife; and, that Joe and the plaintiff maintained a home and household on the 68.5 acre tract of land. Unquestionably, it was established as a matter of law

that the plaintiff and Joe M. Collora, prior to January 17, 1950, lived together as husband and wife and held each other out to the public as husband and wife. Thus, two of the elements required to establish a common law marriage were proved by evidence that is conclusive.

With respect to the remaining element required to establish a common law marriage (a present agreement to be husband and wife), the substance of the plaintiff's uncontradicted testimony is that she and Joe M. Collora agreed to be married in April, 1949. Her testimony was direct and positive. However, under the circumstances present, the testimony, though direct, positive and uncontradicted, ushers into play the rule of permissible skepticism.

As a general rule, the uncorroborated testimony of an interested party does no more than raise a fact question, which is to be resolved by the trier of fact. But, if the testimony of the interested party is clear, direct, positive and free from contradiction and there are no circumstances that tend to cast suspicion on it, the testimony must be accepted as true as a matter of law and no issue of fact is raised. This is especially true when the testimony is of a character that permits ready contradiction if untrue, and the adverse party offers no contradicting evidence. *Flack v. First Nat. Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628 (1950); *Cochran v. Wool Growers Central Storage Co.*, 140 Tex. 184, 166 S.W.2d 904 (1942); *Simmonds v. St. Louis, B. & M. Ry. Co.*, 127 Tex. 23, 91 S.W.2d 332 (Tex. Comm'n App.—1936, opinion adopted). However, where the uncontradicted testimony of an interested party is of such a nature that it cannot be readily contradicted if untrue, an issue relating to the credibility of the witness is presented, which is to be determined by the jury in a jury-trial case. *James T. Taylor, Etc. v. Arlington Ind. School District*, 160 Tex. 617, 335 S.W.2d 371 (1960). Also, the testimony of an interested party relating to a matter of which the adverse party has no knowledge or ready means of contradiction does no more than raise an issue of fact. *Lewisville*

*State Bank v. Blanton,* 525 S.W.2d 696 (Tex.Sup.1975).

The rules announced in the *Taylor* and the *Lewisville Bank* cases control the disposition of this appeal. Even though those cases are summary judgment cases, there is no reason why the same rules should not apply to an instructed verdict case. The rule set out in the *Taylor* case has been applied by the appellate courts of this State in many cases other than summary judgment cases. See *Gevinson v. Manhattan Construction Co. of Okla.,* 449 S.W.2d 458 (Tex.Sup.1969); *Victor Equip. Co. v. Denton Independent Sch. Dist.,* 548 S.W.2d 464 (Tex.Civ.App.—Fort Worth 1977, writ ref'd n. r. e.); *Berner v. Ferris,* 538 S.W.2d 658 (Tex.Civ.App.—Amarillo 1976, no writ); *City of Garland v. Wyrick,* 523 S.W.2d 482 (Tex.Civ.App.—Eastland 1975, writ ref'd n. r. e.); *Kimbell Milling Company v. Marcet,* 449 S.W.2d 100 (Tex.Civ.App.—San Antonio 1969, no writ); *Taylor v. Benton,* 390 S.W.2d 509 (Tex.Civ.App.—Eastland 1965, no writ); *Warlick Press, Inc. v. Lantex Construction Co.,* 375 S.W.2d 349 (Tex.Civ. App.—Tyler 1964, no writ).

Juries are the exclusive judges of the credibility of witnesses and the weight to be given their testimony, *Leyva v. Pacheco,* 163 Tex. 638, 358 S.W.2d 547 (1962). " . . . where you have a jury the trial court cannot decide what witnesses are credible or incredible". *West v. Slaughter,* 384 S.W.2d 185 (Tex.Civ.App.—Waco 1964, writ ref'd n. r. e.).

■ In the instant case, the only witness who could have contradicted plaintiff's testimony concerning the asserted agreement to be married was Joe M. Collora, who died several years before the plaintiff filed this suit. The defendant did not have the means of contradicting the plaintiff's testimony. Her testimony is of such a nature that the defendant could not readily contradict it, if it is untrue. The attendant circumstances create issues of fact which should have been submitted to the jury for determination. *Taylor,* supra; *Lewisville Bank,* supra; *Huie v. Lone Star Air Conditioning Company,* 486 S.W.2d 182 (Tex.Civ.

App.—Waco 1972, writ ref'd n. r. e.); *Southwest Bank & Trust Co. v. Executive Sportsman Association,* 477 S.W.2d 920 (Tex.Civ.App.—Dallas 1972, writ ref'd n. r. e.); *Republic Insurance Co. v. State Farm Insurance Co.,* 416 S.W.2d 557 (Tex.Civ.App. —Fort Worth 1967, no writ); *Barker v. Kidd,* 357 S.W.2d 490 (Tex.Civ.App.—Austin 1962, no writ). We are of the opinion and so hold, that the credibility of the plaintiff was cast in issue, which precluded the granting of her motion for an instructed verdict.

The plaintiff further contends that the trial court correctly granted her motion for an instructed verdict because she was awarded an undivided one-half interest in the 68.5 acres by the 1959 divorce decree, and that such an award is not open to the defendant's attempted collateral attack thereon. The defendant claims that the specific 68.5 acre tract was not adequately described in the divorce decree and could not be located on the ground from such description; consequently, the recitals in the divorce decree are legally insufficient to award to the plaintiff, as a matter of law, an undivided one-half interest in either the equity under the contract or in the land herein involved.

The only mention made in the divorce decree, with respect to any property situated in Lavaca County, Texas, is found in the following excerpt from the decree:

"The Court finds that the parties hereto have asserted a claim in the farm and some improvements located on said farm in Lavaca County, Texas. The Court finds that the Plaintiff, JOSEPH MICHAEL COLLORA, has a separate property interest and equity in said farm and improvements to the extent of $350.00; and that the balance of the equity is the community property of the parties hereto. The Court finds that as to said community property equity the Plaintiff, JOSEPH MICHAEL COLLORA, owns a one-half (½) interest, and OLLIE BELL COLLORA owns a one-half (½) interest . . . ."

■ The interpretation and construction of a judgment is not an attack upon it. *State v. Reagan County Purchasing Co.*, 186 S.W.2d 128, 136 (Tex.Civ.App.—El Paso 1944, writ ref'd w. o. m.); G. Hodges, Collateral Attacks on Judgment, 41 Texas L.Rev. 163, 188 (1963); A judgment is to be construed like other written instruments. *Lone Star Cement Corporation v. Fair*, 467 S.W.2d 402, 404, 405 (Tex.Sup.1971). The defendant's claim relating to the 1959 divorce decree does not constitute a collateral attack on the decree itself.

We now consider the effect of the pertinent recitals in the 1959 divorce decree. It was long ago established by the Supreme Court of Texas that for an instrument to be a valid conveyance of land, the description must be so definite and certain on the face of the instrument itself, or in some other writing therein referred to, that the land can be identified with reasonable certainty in order that it may be located on the ground. *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.Sup.1972); *Norris v. Hunt*, 51 Tex. 609 (1879). The rule applied with equal force to a judgment. *Greer v. Greer*, 144 Tex. 528, 191 S.W.2d 848 (1946).

■ The 1959 divorce decree does not refer to any writing which describes or in any manner locates the 68.5 acre tract here involved. There is nothing in the decree which suggested that the "farm and some improvements located on said farm" is the identical 68.5 acres which the plaintiff sought to partition in this lawsuit. There is nothing in the decree which will support a presumption that only one farm was owned by the parties in Lavaca County. The decree purports to deal only with a "claim", which, without more, could be one of several claims asserted by the parties. The description contained in the divorce decree renders it impossible to locate any specific tract of land on the ground in Lavaca County. The decree cannot support the plaintiff's contention that she was awarded an undivided one-half interest in the said 68.5 acres of land.

■ Assuming, arguendo, that the plaintiff and Joe M. Collora were lawfully married under the common law, as contended by her, the equity under the contract which was built up over the years prior to the 1959 divorce decree, became community property. Since the trial court found that Joe M. Collora owned a $350.00 equity therein as his separate property and that the remainder of the equity was community property, and since the divorce decree did not partition the "balance" of the equity between the parties, Joe M. Collora and the plaintiff, from and after December 15, 1959, owned such "balance" of the equity as tenants in common, with each owning an undivided one-half interest therein. *Busby v. Busby*, 457 S.W.2d 551 (Tex.Sup.1970).

Joe M. Collora's assignment of the contract and his attempted transfer of the entire tract could not transfer a greater interest in the property than that which he owned. The Camille Corporation could have acquired no more than Joe Collora's undivided one-half interest in the equity owned by him and the plaintiff as of December 15, 1959, whatever that interest may have been, and could have transferred no more than that interest in the property to the defendant. The equities, if any, owned by the plaintiff and the defendant in the contract were not adjusted by the trial court in the instant case, in what could only have been an action for adjustment of equities incidental to a partition of common property rights. See *Smith v. Cooper*, 541 S.W.2d 274 (Tex.Civ.App.—Texarkana 1976, no writ).

Since an issue relating to credibility of the plaintiff is presented, and since the 1959 divorce decree did not award the plaintiff an undivided one-half interest in the land in controversy, it was reversible error to grant the plaintiff's motion for an instructed verdict. Points 1 and 2 are sustained.

## THE APPEAL OF THE JUDGMENT FAVORABLE TO INTERVENORS

The will of Joe M. Collora, Deceased, was admitted to probate in February, 1968. Charles Frank Mustachia and Frances Mustachia qualified as trustees thereunder.

The intervenors are the sole beneficiaries under the will of the decedent. There is no evidence as to the age of the intervenors.

In disposing of the appeal concerning that portion of the judgment which was favorable to the intervenors, the contentions made by the defendant in his points (3 and 4) present three questions. First, did the evidence reveal that an attorney-client relationship existed as a matter of law between the defendant and Joe M. Collora in January, 1962, when the latter assigned the contract and purported to convey the land to the Camille Corporation all of his rights in and to the contract and to the 68.5 acre tract? Second, if such an attorney-client relationship did exist, does the evidence establish as a matter of law that the aforesaid assignment and conveyance constituted a *transaction* between the defendant and Joe M. Collora? Third, if there was such an attorney-client relationship and if the transfer of the property rights to the Camille Corporation constituted a transaction between the defendant and Joe M. Collora, does the evidence conclusively show that the transaction was unfair to Joe M. Collora?

It is a well established rule in this State that the attorney-client relationship is highly fiduciary in nature. The integrity of such relationship should and must be carefully observed and scrupulously upheld at all times for the attorney owes his client the highest of good faith and honest dealing. There is a presumption of unfairness which attaches to a transaction between an attorney and his client, and once it is shown that the attorney-client relationship existed at the time of the transfer of property from the client to the attorney, the burden of proving its fairness is on the attorney. *Archer v. Griffith*, 390 S.W.2d 735 (Tex.Sup. 1964); *Ames v. Putz*, 495 S.W.2d 581 (Tex. Civ.App.—Eastland 1973, writ ref'd).

It is conclusively established by the evidence that the defendant is an attorney at law and that he was the attorney for Joe M. Collora, his client, during the divorce proceedings between Collora and the plaintiff. It is further conclusively shown that an attorney-client relationship did exist between the defendant and Joe M. Collora at the time of the assignment of the contract and the conveyance of the land by the latter to the Camille Corporation in January, 1962.

The evidence further showed that in January, 1962 the Camille Corporation was in the business of dealing in real estate matters, and the purchasing of notes receivable and accounts receivable. The defendant was the president of the corporation and his minor children were the sole stockholders thereof. Following the execution of the deed and the assignment to the Camille Corporation, the buildings on the premises were repaired and "substantial amounts of improvements" were built thereon. Horses, which belonged to the defendant's children, were pastured on the land; the children used the land for recreation. In defendant's own words, which were not challenged, "anything I did was done in behalf of the children through their corporation and through them individually". The defendant testified that it was the corporation that expended its money on the property "the majority of the time"; that "on many occasions when their corporation was out of money, I would lend money to the corporation or advance it in their behalf"; that he never paid for any improvements "that occurred on the farm" out of his own money; and that the Camille Corporation assumed the balance of the purchase price due under the contract and made payments thereon to the Veterans' Land Board.

The defendant further stated that in January, 1962, Joe M. Collora owed him $4,000.00, being $500.00 for a loan and $3,500.00 for attorney's fees in connection with legal services previously furnished. He also said that he cancelled the $4,000.00 obligation in consideration of the execution of both the deed and the assignment to the Camille Corporation by Joe M. Collora.

█ The transfer of the subject property to the Camille Corporation was not directly from Joe M. Collora, the client, to the defendant, his attorney, but was a transfer from the client to his attorney's family-

owned corporation. The transfer, on its face, was a transaction between Joe M. Collora and the Camille Corporation and as such did not constitute a transaction as a matter of law between the client, Joe M. Collora, and his attorney, the defendant.

In order to hold that the assignment and conveyance to the Camille Corporation was in fact a transaction between the defendant and Joe M. Collora, we would be required to hold that the evidence established as a matter of law: 1) that the Camille Corporation was either the defendant's alter ego, and that the transfer of the property to the Camille Corporation was, in legal effect, a transfer to the defendant himself, or 2) that the defendant, in January, 1962, had a plan to ultimately acquire the property for himself and used the Camille Corporation as a vehicle to accomplish his purpose. Either is a fact issue that the jury should have decided.

In view of our holding that it was not conclusively established by the evidence that the assignment and conveyance to the Camille Corporation constituted a transaction between the defendant and Joe M. Collora, it is not necessary that we decide in this appeal whether the transaction was unfair to Joe M. Collora as a matter of law. Points 3 and 4 are sustained.

### DISPOSITION OF THE APPEAL

The judgment of the trial court is reversed and the cause is remanded to the trial court for a retrial. Costs of this appeal are assessed 50% to the plaintiff and 50% to the intervenors.

REVERSED and REMANDED.

NYE, Chief Justice, dissenting.

I respectfully dissent because an instructed verdict was proper on the element of whether the plaintiff, Ollie B. Collora, and Joe M. Collora agreed to be married. The "rule of permissible skepticism" relied upon by the majority is not a rule of mandatory application.

The general elements of a common law marriage are: 1) a present agreement to be husband and wife; 2) living together as husband and wife; and 3) a holding of each other out to the public as husband and wife. *Humphreys v. Humphreys,* 364 S.W.2d 177 (Tex.Sup.1963). The only element that is at all questionable in the case before us is the "present agreement" element. As stated by the majority in their original opinion, the testimony of the plaintiff concerning the "present agreement" was admitted to be direct, positive and uncontradicted. However, the majority would now hold that this testimony of Ollie Collora is unreliable because of the credibility of the plaintiff and her testimony should be tested by a jury determination.

The general rule that evidence given by an interested witness, even though uncontradicted, presents a jury issue, is also subject to a well-known exception, aptly stated by the Supreme Court in *Gevinson v. Manhattan Construction Company of Oklahoma,* 449 S.W.2d 458, 467 (Tex.Sup.1969). On the other hand, the Court reasoned:

> "conclusive effect may be given to the testimony of an interested witness provided the testimony is clear, direct and positive and there are no circumstances tending to discredit or impeach the same."

The Supreme Court also recognized this exception:

> "when the opposite party had the means and opportunity of disproving the testimony, if it were not true, and failed to do so." *Gevinson,* supra at 467.

The testimony of an interested party or witness is not wholly without probative force. An instructed verdict that is based thereon favorable to the party with whom the witness is identified is proper when the testimony pertains to matters reasonably capable of exact statement; is clear, direct and positive; is internally devoid of inconsistencies and contradictions; and is uncontradicted either by the testimony of other witnesses or by circumstances. In other words, when there is nothing to cause any reasonable suspicion as to its truth it may be given conclusive effect. "Particularly is this rule applicable when there is some cor-

roboration, either by another witness or by surrounding circumstances; but, of course, when there exists corroboration we are no longer dealing with an issue raised solely by the testimony of an interested witness." McDonald Texas Civil Practice, Jury Trial General Sec. 11.28.6 pp. 247–248 (1965).

Here the conclusive testimony of the witnesses as to the second and third elements of a common law marriage tended to corroborate the plaintiff's testimony concerning the present agreement to be married. In addition, the defendant's attorney did not even attempt to cross-examine the plaintiff. Furthermore, there was no cross-examination of the other non-interested witnesses who testified directly, positively and unequivocally concerning the other essential elements of the common law marriage.

Although the defendant did not have the deceased husband's testimony, the defendant's attorney did have available for use the time honored method for testing a witness's credibility, and that was by cross-examination of the plaintiff wife's testimony.

The cases cited by the majority which establish the general rule are summary judgment cases which do not test the credibility of the witnesses before a trial court in the same manner as live witnesses. In *Lewisville State Bank v. Blanton,* 525 S.W.2d 696 (Tex.Sup.1975), a case the majority termed as controlling, the Supreme Court noted that the only summary judgment proof of the issue in question was an affidavit of an interested witness stating facts of which the defendants had *no* knowledge or ready means of confirmation and, therefore, the Court concluded the affidavit alone was insufficient to conclusively establish the facts necessary to support the summary judgment. This is not a summary judgment case and, in addition, there are other circumstances substantiating the plaintiff's testimony.

The majority states that *James T. Taylor & Son, Inc. v. Arlington Ind. School District,* 160 Tex. 617, 335 S.W.2d 371 (1960) is also controlling in the disposition of this case. In the later case of *Gevinson,* cited above, the Supreme Court, by the following language clearly shows that the rule in *Taylor* does not carry the mandatory import suggested by the majority opinion. Our highest court said:

> "On the other hand the basis for recognizing an exception [to the interested witness rule] is *weakened somewhat* when the testimony is such that it could not readily be contradicted if untrue. See *James T. Taylor & Son, Inc. v. Arlington Ind. Sch. Dist.,* 160 Tex. 617, 335 S.W.2d 371;" *Gevinson,* supra at 467. (emphasis added).

It should be emphasized that the Supreme Court did not state that the basis for recognizing the above mentioned exception to the interested witness rule is precluded as a matter of law if the testimony of the interested witness might not be readily contradicted. I can only conclude that the circumstances in each case must be carefully considered.

The circumstances surrounding the plaintiff and her deceased husband living together prior to the ceremonial confirmation of their alleged common law marriage, would not comport with human experience had it not been true that they were living together pursuant to a "present agreement" to be married. There were religious difficulties involved in consummating the marriage ceremonially because plaintiff wife, Ollie, was a Protestant, and the husband, Joe, was a Catholic. In addition, plaintiff and Joe Collora were living together as husband and wife in the home of his mother, a "devout Catholic". During this same time the conclusive evidence from disinterested witnesses established that they held themselves out to the community to be husband and wife. How could it be said that absent the unimpeachable "present agreement" which the wife testified to under oath, Joe and Ollie would have exhibited the publicly viewed marriage relationship. This circumstantial evidence established conclusively all three elements of the common law marriage. When such corroboration exists, we are no longer dealing with an issue raised solely by the testimony of an interested witness. See *McDonald,* supra.

It is interesting to me that in a case very similar to the facts in this very case the Commission of Appeals would have also approved the instructed verdict of the trial court. They said:

"Proof that a couple lived together under the same name, introducing each other as husband and wife, respectively, recognizing their children, and the many other respects tending to show their marital status, is sufficient to prove a marriage. It is not necessary in addition to offer evidence of the statutory celebration, or of the actual agreement of the parties to be husband and wife. These essential facts are embraced in the marriage which is thus proved by circumstances." *Consolidated Underwriters v. Kelly,* 15 S.W.2d 229, 230 (Comm'n App. 1929, judgmt. adopted).

The general rule is that a directed verdict for the plaintiff should be granted where reasonable minds could draw only one inference from the evidence. 56 Tex.Jur.2d, Trial § 206 (1964); 3 McDonald, Texas Practice § 11.28.1 (1965). The three elements required to constitute a common law marriage can be established by circumstantial as well as direct evidence. I must conclude that the overwhelming evidence in this case gave conclusive effect to the plaintiff's testimony so that reasonable minds could not have differed as to the truth that the "present agreement" did in fact exist.

I would sever the action brought by the intervenors from that brought by the plaintiff; affirm that portion of the judgment which is favorable to the plaintiff; and reverse and remand for a new trial that portion of the judgment which is favorable to the intervenors.

## OPINION ON MOTION FOR REHEARING

BISSETT, Justice.

Ollie B. Collora, the plaintiff, in her motion for rehearing, contends that her testimony to the effect that in April, 1949, she and Joe M. Collora "agreed to a marriage" was corroborated by two witnesses, viz:

Evelyn Carabela and Ruby Measles. We have re-read the testimony of these two witnesses. Neither testified that she was "informed that the parties agreed to a marriage", as asserted in the motion for rehearing. Evelyn Carabela testified that in the summer of 1949, she was "informed they got married". She did not identify her informant. Ruby Measles, an aunt of Ollie B. Collora, testified that in the summer of 1949, and after Ollie B. Collora and Joe Collora had moved "in with Joe's mother", Ollie and Joe "said they were married, and I took it as they were married". The testimony of the witnesses does not corroborate Ollie B. Collora's testimony with respect to a present agreement in April, 1949 to be husband and wife.

As stated in our original opinion, the evidence established as a matter of law that Joe M. Collora and Ollie B. Collora, prior to the execution of the contract of purchase and sale of the land in question, cohabited and held themselves out to the public as husband and wife. Thus, two of the essential elements of a common law marriage were conclusively established. The controlling question presented by the appeal is whether an agreement to marry has also been established as a matter of law. Since this is an instructed verdict case, the evidence must be viewed in the light most favorable to Franklin R. Navarro, the defendant, against whom the verdict was instructed. While we recognize that it is not essential that an express agreement to marry must be shown by direct evidence, and that a contract to marry may be implied from evidence which establishes the other two elements of the marriage, we do not believe that, in this case, the other essential element, the agreement to marry, can be implied as a matter of law.

The only evidence of an *agreement to marry* is found in the testimony of Ollie B. Collora, the plaintiff. Under all the circumstances revealed by the record, the general rule that the uncorroborated testimony of an interested party does no more than raise a fact issue to be resolved by the trier of fact should be applied in this case. We

remain convinced an issue of fact concerning the asserted agreement to be married in April, 1949 was raised by the evidence, and that the credibility of Ollie B. Collora was cast in issue. The issue should have been submitted to the jury for determination. The trial court erred in granting the plaintiff's motion for an instructed verdict. The motion for rehearing is overruled.

NYE, Chief Justice, dissenting.

I respectfully still dissent. I remain convinced that the portion of the trial court's judgment affecting Ollie Collora should be affirmed.