Ollie B. COLLORA, Petitioner,

v.

Franklin R. NAVARRO, Respondent.

No. B-7622.

Supreme Court of Texas.

Nov. 29, 1978.

Houston C. Munson, Jr., Gonzales, for petitioner.

Don Blansitt, Schulenburg, for intervenors.

Michael W. Melton, Schlanger, Cook, Cohn & Mills, Joel W. Cook, Houston, for respondent.

SAM D. JOHNSON, Justice.

The question presented for our decision in this case is a narrow one. The substantive legal issue is whether or not a directed verdict may be based on the uncontradicted testimony of a party to the lawsuit. To pose the question in its precise factual context, did the testimony of Ollie Collora, plaintiff below and petitioner here, establish as a matter of law one element (i. e., a present agreement to be husband and wife) of a common-law marriage between herself and Joe Collora when the other elements of such a marriage were conclusively proven by evidence other than her testimony? The trial court ruled in favor of Mrs. Collora by granting her motion for directed verdict. The court of civil appeals, with one member dissenting, reversed and remanded the cause. 566 S.W.2d 304. We agree with the action of the trial court and accordingly reverse the judgment of the court of civil appeals, but for reasons stated below, remand the cause to the trial court for rendition of a proper judgment.

Ollie Collora filed this suit against Franklin Navarro, defendant below and respondent here, in 1971 for partition of a 68.5-acre farm in Lavaca County, Texas. She alleged that she had an undivided one half interest in the farm by virtue of her common-law marriage to Joe Collora, who originally purchased the land in his name only and later attempted to transfer it to Camille Corporation, predecessor-in-title to respondent Navarro. The children of Joe and Ollie Collora intervened in the case on the side of Mrs. Collora, arguing that the transfer of land was fraudulently induced. They requested that a constructive trust be imposed on the land in their favor. At the close of the evidence, the trial court directed a verdict in favor of both Mrs. Collora and the children intervenors. Navarro appealed.

The court of civil appeals in its original opinion upheld the judgment in favor of Mrs. Collora. On rehearing, however, the court reversed the directed verdicts as to the children intervenors and Mrs. Collora and remanded both causes to the trial court. 566 S.W.2d 304. One member of the court dissented from the reversal as it related to Mrs. Collora. 566 S.W.2d 304 at 312–14. The children intervenors have not appealed from that decision and are therefore not now before this court. Only Mrs. Collora has appealed.[1] She bases her appeal on the argument that the court of civil appeals erred in reversing the trial court because the evidence conclusively established the fact of her common-law marriage to Joe Collora, thus leaving no issue to be presented to the jury. We agree with this contention.

Ollie and Joe started dating in 1947, and by 1949 were going together on a steady basis. Ollie testified that in April 1949 she and Joe "agreed to a marriage" and moved into his mother's home where they lived until late 1949 or early 1950. This is the period of the claimed common-law marriage. Thereafter, in her words, they "confirmed" their marriage through a civil ceremony on February 11, 1950, some ten months after the commencement of their alleged common-law marriage. The reason ascribed for delaying the ceremonial marriage was religious differences between Joe's mother, a Catholic, and Ollie, a Protestant.[2] Seven different witnesses, ranging from the County Agricultural Agent to next-door neighbors to relatives, testified that during the period between April 1949 and February 1950, the time period of critical inquiry, Joe and Ollie held themselves out to be married. Joe introduced Ollie as his wife, Mrs. Collora. They told people they were married. They lived together under the roof of Joe's mother as man and wife. For more than ten years, from April 1949 (the inception of their asserted common-law marriage) through the ceremonial marriage in 1950 and up until their divorce in December 1959, they cohabited together, maintained a household, and introduced themselves to people as Mr. and Mrs. Collora. All of this testimony was clear, direct, positive, and uncontradicted. Navarro called no witnesses of his own nor did he cross-examine any of Ollie's witnesses on the matter of her common-law marriage to Joe.

In late 1948 or early 1949, while still dating and before they had "agreed to a marriage," Joe and Ollie became interested in purchasing land under the Texas Veterans Land Board Program, Article 5421m, Texas Revised Civil Statutes Annotated, now codified as Texas Natural Resources Code Annotated, Sections 161.001–161.403. They decided on the 68.5-acre tract which is the subject matter of this suit. It was not until January 17, 1950, in the ninth month of their claimed common-law marriage, however, that Joe Collora, as purchaser, contracted with the Veterans Land Board for the purchase of this property in his

1. In this connection, we would note that Navarro has not filed any written briefs in this court.

2. It should be noted that whatever was the nature of those differences, it was not sufficient to prevent Ollie and Joe from residing in his mother's home without benefit of a ceremonial marriage.

name only.[3] Joe entered into this contract during the period of the asserted common-law marriage, but one month prior to their ceremonial marriage in February.

Joe and Ollie were divorced on December 15, 1959. Respondent Navarro, an attorney, represented Joe during the divorce proceedings. At the time of those proceedings the Veterans Land Board contract was still outstanding and in force and effect. The divorce decree granted Joe and Ollie each one half of the equity in the farm, but did not partition the tract of land. A little more than two years later, in January 1962, Joe attempted to convey by deed title to *all* of the land to the Camille Corporation. Later in the same month he assigned the Veterans Land Board contract to the Corporation. Ollie did not join in these transactions. Camille Corporation in turn attempted to convey by deed title to *all* of the 68.5-acre tract to Navarro. Joe Collora died testate in 1968. This suit was instituted in 1971. The decisions of the lower courts are set forth above.

■■■ The court of civil appeals applied the proper standard of review in this directed verdict case. The rule as generally stated is that the plaintiff is entitled to a directed verdict when reasonable minds can draw only one conclusion from the evidence. The task of an appellate court in such a case is to determine whether there is any evidence of probative force to raise fact issues on the material questions presented. The court must consider all of the evidence in the light most favorable to the party against whom the verdict was instructed, discarding all contrary evidence and inferences. *Henderson v. Travelers Ins. Co.*, 544 S.W.2d 649 (Tex.1976); *Echols v. Wells*, 510 S.W.2d 916 (Tex.1974). When reasonable minds may differ as to the truth of controlling facts, the issue must go to the jury. *Najera v. Great Atlantic & Pacific Tea Co.*, 146 Tex. 367, 207 S.W.2d 365 (1948).

■■ The validity of the common-law marriage has always been recognized in Texas. 1 L. Simpkins, Texas Family Law § 2:1 (1975); Comment, *Common-Law Marriage in Texas*, 21 Sw.L.J. 647 (1967). It is authorized by statute. Tex.Fam.Code Ann. § 1.91. A valid common-law marriage consists of three elements: (1) an agreement presently to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. *Humphreys v. Humphreys*, 364 S.W.2d 177 (Tex.1963). There was abundant evidence from other sources of the second and third elements, and the court of civil appeals correctly held that they were established as a matter of law. Consequently, our concern is directed solely to proof of the first element.

The only direct evidence relating to the first element—a present agreement to be husband and wife—was Ollie's testimony that she and Joe had "agreed to a marriage." Her testimony was direct, positive, and uncontradicted. Navarro chose not to cross-examine her, nor did he call her as an adverse witness. There was no other direct evidence produced at trial that proved or disproved her testimony. Under these circumstances, the court of civil appeals held that Ollie's testimony, standing alone, could do no more than raise a fact issue of credibility and could not support a directed verdict. With this conclusion we cannot agree.

**3.** Under the provisions of the Veterans Land Board Program, Joe signed a contract of sale and purchase, with the Board as seller and Joe as buyer. It provided for a purchase price of $7,000, with $350 as a down payment, the remainder to be paid in six-month installments over a forty-year period at an interest rate of three percent per year. The contract was signed on January 17, 1950. The Board purchased the land by deed dated January 23, 1950. There is no evidence that the Board has ever executed and delivered a deed to the land to anyone. It must therefore be assumed that the Board still retains legal title to the land. Based on this assumption, Ollie Collora has at best an equitable interest in the land. The 1959 divorce decree granted Ollie and Joe each an undivided one half equitable interest in the land, with Joe having as separate property an equity interest of $350 (representing the down payment). It is also noted that all installment payments since 1962 have been paid either by the Camille Corporation or Navarro.

■ The statement is often encountered that evidence given by a party or a witness who has an interest in the outcome of the suit cannot be the basis for an instructed verdict; it raises an issue of credibility upon which the jury must pass. 62 Tex. Jur.2d *Witnesses* § 374; Annot., 8 A.L.R. 796. This is the general rule, and one to which we still adhere. As with most general statements, however, this one is not without exception.

The exception to the rule was explained thusly by McDonald:

"But the testimony of an interested party or witness is not wholly without probative force. An instructed verdict based thereon favorable to the party with whom the witness is identified is proper when the testimony pertains to matters reasonably capable of exact statement, and is clear, direct, and positive, is internally devoid of inconsistencies and contradictions, and is uncontradicted either by the testimony of other witnesses or by circumstances—in short, when there is nothing to cause any reasonable suspicion as to its truth." 3 R. McDonald, Texas Civil Practice § 11.28.6 at 249.

This exception is most appropriate when the opposing party has the means and opportunity of disproving the testimony or testing the credibility of the witness, but fails to avail himself of it. On the other hand, as we stated in *Gevinson v. Manhattan Construction Co. of Okl.*, 449 S.W.2d 458 (Tex.1969), "the basis for recognizing an exception is weakened somewhat when the testimony is such that it could not readily be contradicted if untrue." 449 S.W.2d 458 at 467 [and cases cited].

The court of civil appeals was of the opinion that Mrs. Collora's testimony, although clear, direct, positive, and uncontradicted, was of such a nature that Navarro could not readily contradict or disprove it. Consequently, it presented an issue of credibility for the jury. There are three factors present in this case which, taken together, lead us to disagree with the lower court's holding.

First, the general rule governing the finality to be given to testimony of an interested witness is by no means an absolute one to be applied in a cut-and-dried fashion. Rather, it is flexible and its application must turn on the facts of each case. Certainly there will be cases where the credibility of an interested witness or party is so suspect that it must go to the jury, even though the testimony is uncontradicted. Then there will also be cases where the testimony of the witness is so clear that the jury should not be allowed to speculate as to his veracity. *Cf. Praetorian Mutual Life Insurance Co. v. Sherman*, 455 S.W.2d 201 (Tex.1970), *with Great American R. Ins. Co. v. San Antonio Pl. Sup. Co.*, 391 S.W.2d 41 (Tex.1965). Between these two extremes lies a broad spectrum of possibilities. Our courts have recognized this in the past by setting forth certain standards by which the rule and its exceptions are to be measured: Is the testimony clear, direct, and positive? Is it internally consistent? Is it contradicted or corroborated by other circumstances in the case? Is it contradicted or corroborated by other witnesses? Does the opposing party possess the means to verify or dispute the testimony? Does he have a way to test the witness' credibility? Did he make use of those means? Obviously no one factor automatically can be dispositive in every case.

. ■ ·The court of civil appeals in this case, however, has in essence resorted to an automatic test for applying the rule, that being whether or not it is possible to contradict the testimony of the interested witness. The practical effect of this holding would be to foreclose the possibility of an instructed verdict in many, if not most, common-law marriage cases. It is well-established that the agreement to marry need not be shown by direct evidence, but may be implied or inferred from evidence that establishes the elements of cohabitation and holding out to the public as husband and wife. *Humphreys v. Humphreys, supra*, at 178; *Consolidated Underwriters v. Kelly*, 15 S.W.2d 229, 230 (Tex.Com.App.1929, jdgmt adopted); Tex.Fam.Code Ann. § 1.91(b); Comment, *Common Law Marriages in Texas*, 13 Baylor L.Rev. 168 (1961).

█ In this case there is no need to imply an agreement between Ollie and Joe, since Ollie testified to an express agreement. There is nothing in the record to suggest she was telling anything less than the truth. When all of the evidence points only to the truthfulness of the witness, a directed verdict cannot automatically be rejected solely because the witness' testimony cannot be contradicted. In another case and under different facts, perhaps that one factor would be sufficient to defeat an instructed verdict, but in this case and under these facts, it is not.[4]

A second factor in this case leads us to disagree with the court of civil appeals. The court placed great importance on the fact that Navarro had no way to disprove or contradict Ollie's testimony as to the agreement. Under the present circumstances, we are inclined to agree with the dissent in the court of civil appeals that Navarro could have utilized the "time honored method for testing a witness's credibility, . . . cross-examination . . ." 566 S.W.2d 304 at 313.[5] Having failed to do so, his complaint loses its primary thrust.

Finally, there is a third factor which, when taken in combination with the two listed above, compels us to reverse the decision of the court of civil appeals. We have already pointed out that the agreement to be husband and wife may be inferred from proof of the other two elements of a common-law marriage. In this case there is no need to resort to inferences, inasmuch as there is direct evidence of an express agreement. We find persuasive Mrs. Collora's argument that the proof of cohabitation and holding out to the public was corroborative evidence of her direct testimony.

"[W]hen there exists corroboration [either by another witness or surrounding circumstances] we are no longer dealing with an issue raised solely by the testimony of an interested witness." 3 R. McDonald, Texas Civil Practice, *supra*, at 250.

We hasten to emphasize that the three factors considered important in this case will not automatically be dispositive of other cases. The circumstances of each case must be carefully considered, and each case must turn on its own facts.

█ One further problem remains to be resolved concerning the proper disposition of this appeal. Although Ollie prayed for a partition of the land, the trial court granted her "title to and possession of an undivided one-half interest" in the land. As explained in footnote three to this opinion, however, legal *title* to the land still rests with the Veterans Land Board, which was not made a party to this suit. The trial court thus was without power to award to Ollie a legal title to the land. At most, it had the power to adjust the equitable interests in the land among the parties to this action. It is of course true that Joe's assignment of the contract and attempted transfer of the entire tract in 1962 to the Camille Corporation would not be effective to transfer a greater interest in the property than that which he owned. *Bradley v. Bradley*, 540 S.W.2d 504, 512–13 (Tex.Civ. App.—Fort Worth 1976, no writ). The Camille Corporation could have acquired no more than Joe's undivided one half equitable interest in the farm, and it in turn could transfer no greater interest than that to Navarro. We have therefore determined that this cause must be remanded to the

4. Since this case does involve direct evidence of an express agreement, we do not consider or pass on the propriety of a directed verdict when the agreement must be implied from proof of the other two elements. *But cf. Prudential Insurance Company of America v. Krayer*, 366 S.W.2d 779, 780 (Tex.1963).

5. Cross-examination has long been regarded as the foremost weapon in the attorney's selective arsenal of trial tactics for the purpose of ascertaining the truth. A noted criminal prosecutor has written that cross-examination is the principal tool "for separating truth from falsehood, actual knowledge from hearsay, fact from imagination and opinion; it is the best technique, as one legal scholar wrote, 'for reducing exaggerated statements to their true dimensions.'" V. Bugliosi, Till Death Us Do Part at 241 (1978). Professor Wigmore has declared it "beyond any doubt the greatest legal engine ever invented for the discovery of truth." 5 Wigmore, Evidence § 1367 at 32 (Chadbourn rev. 1974).

trial court for a determination of the equitable interests in the land owing to each party.[6]

Mrs. Collora's cause is severed from the cause brought by the children intervenors. As severed, the judgment of the court of civil appeals relating to Mrs. Collora is reversed and the cause is remanded to the trial court for entry of a proper judgment in accordance with this opinion.

---

6. Neither party has addressed this defect in the judgment at any stage in the appeal of this case. Indeed, the parties appear to have tried the case on the assumption that they owned legal title. The court of civil appeals noted the problem, 566 S.W.2d 304 at 307, but did not pass upon it in light of its decision to remand the case for a new trial.