YELVERTON, Judge.
Virginia Faye Jones, a resident of Texas, brought suit in Louisiana for damages based on the wrongful death of Boyce O’Neal Jones, who was killed in an industrial accident on December 20, 1979, near Lake Charles, Louisiana. She sued in the capacity of the surviving spouse under La. Civil Code art. 2315. Various defendants were named; each filed an exception of no right of action; the exceptions were based on the fact that on March 12, 1979, just nine months before Boyce’s death, a Texas court ended the Jones’ 20-year marriage by a decree of divorce rendered on the petition of Mrs. Jones; the defendants insisted that for this reason petitioner was not the surviving spouse under article 2315 and had no right to sue.
At the hearing on the exceptions the only evidence offered was the deposition testimony of six persons: petitioner Mrs. Jones, the three children of the marriage, deceased’s brother, and the petitioner’s sister. According to the deposition of Mrs. Jones, her husband, an ironworker, was away from home a lot in his work, a situation that was becoming increasingly troublesome when their three children got to be teenagers. She testified that she filed the divorce action, and then followed through with the divorce itself, to convince her husband that she wanted him home to help with the three teenage children, rather than away from home pursuing his iron-worker’s trade. She testified further that, after the divorce, they got back together. The divorce had apparently accomplished its purpose. He planned to get work closer home when the Lake Charles job was finished — they discussed another ceremonial marriage but he was killed before these plans could be carried out. The totality of the testimony contained in the depositions established, without any contradiction, that on the very next day following the divorce, the deceased returned to the matrimonial domicile, the parties resumed living together in exactly the same relationship as before, and, except for one brief period of estrangement, they lived in conjugal accord until his death.
At the trial of the exceptions of no right of action Mrs. Jones contended that the parties’ conduct after the divorce, as shown by the deposition testimony, proved a common-law marriage recognized in Texas. The trial court rejected the argument that there was a common-law marriage, reasoning, instead, that the positive act of divorce was legally inconsistent with an agreement of marriage (one of the elements necessary to finding a common-law marriage), and that, therefore, the act of divorce legally precluded the subsequent establishment of a common-law marriage. The trial judge maintained the exceptions of no right of action and dismissed petitioner’s suit. We reverse. We find that an application of Texas common-law marriage law to the facts as revealed by the deposition testimony requires that we hold Mrs. Jones was in fact the surviving spouse of her husband, and she therefore has the right to sue.
Petitioner and the deceased were residents of Texas at the time of his death, and had lived there for most of their 20-year marriage. Marital status is determined by the law of the domicile. Succession of Goss, 304 So.2d 704 (La.App. 3rd Cir.1974), writ denied 309 So.2d 339 (La.1975), cert. denied 423 U.S. 869, 96 S.Ct. *1350 133, 46 L.Ed.2d 99 (1975). The validity of a common-law marriage has always been recognized in Texas. Collora v. Navarro, 574 S.W.2d 65 (Tex.1978). Because petitioner was the common-law wife of deceased under the laws of Texas, we must recognize the marriage in these Louisiana proceedings, and petitioner has a right of action under the wrongful death provisions of LSA-C.C. art. 2315. Dupre v. Rochester Ropes, Inc., 216 So.2d 589 (La.App. 3rd Cir.1968).
In Texas, a valid common-law marriage consists of three elements: (1) an agreement to be husband and wife; (2) living together as husband and wife; and (3) holding each other out to the public as such. Collora v. Navarro, 574 S.W.2d 65 (Tex.1978). The agreement to be husband and wife may be express or implied. Id. “It is well-established that the agreement to marry need not be shown by direct evidence, but may be implied or inferred from evidence that establishes the elements of cohabitation and holding out to the public as husband and wife.” Id., 574 S.W.2d, at 69.
The trial court’s conclusion that a once married but divorced couple cannot legally establish a common-law marriage not only does violence to the facts of the present case, but is shown to be incorrect by several Texas decisions. The holding in Rey v. Rey, 487 S.W.2d 245 (Tex.Civ.App.— El Paso 1972) shows that a common-law marriage can be established by a couple previously divorced. Similarly, in Smith v. Smith, 607 S.W.2d 617 (Tex.Civ.App.—Waco 1980), which affirmed a finding of a common-law marriage established following a divorce, the facts of that case, in that court’s words, were:
“Faye testified that she and C.C. reached an agreement to be husband and wife no later than October 30, 1956. There is evidence: that they lived together as man and wife at the ranch from 1931 to 1955 when they got a divorce; that they immediately went back together and lived the same as before until the death of C.C. in 1969. There is testimony from a great number of witnesses who lived near C.C. and Faye that they visited in their home, received visits from them in their homes, that C.C. and Faye lived together as husband and wife; lived after the divorce the same as before.”
In other Texas cases, a common-law marriage was not found, not because divorce was considered a legal impediment to a subsequent re-marriage, but simply because one or more of the three classic elements was absent. For example, in Gary v. Gary, 490 S.W.2d 929 (Tex.Civ. App.—Tyler 1973), the couple had been ceremonially married twice to each other, and twice divorced. The evidence showed that the couple believed their second divorce was probably invalid because they had not met the jurisdictional requirements, and for that reason they lived together for a while after the second divorce, thinking they were still married; then they separated again and had been separated for a year before the man’s death. Since the divorce, not having been judicially set aside, was a legal fact, it would have taken a new agreement to be married, combined with the other elements, to constitute a new marriage; this had not occurred. Their brief cohabitation, with no evidence of the “holding out” element required for a common-law marriage, was not sufficient, according to the court, to imply a new agreement to be married, the facts as a whole being inconsistent with a finding that there was a further agreement to- again become husband and wife, or a new and separate marital arrangement.
Similarly, in Rosetta v. Rosetta, 525 S.W.2d 255 (Tex.Civ.App.—Tyler 1975), there was evidence that the parties cohabited after a divorce, living together for three years, then they separated again. The testimony showed that the three years was a trial period, and that the most that could be said was that there may have been an agreement that after some trial period, if things worked out, or if the man got medical help or counseling, then they might remarry. On the facts of that case the court said that a present agreement to be married is a necessary element of common-law marriage, and it is not sufficient to *1351 agree on present cohabitation and future marriage.
In the instant case, Mrs. Jones stated in her deposition that she and the deceased had discussed a ceremonial marriage, that no definite date had been set, but that it would take place when he came back to work in that area, which he was about to do. Because of the language of the Rosetta case, supra, we have given close attention to this deposition testimony to deter-' mine whether or not the relationship was nothing more than an agreement on present cohabitation and future marriage, which would be insufficient to have established a common-law marriage. In this regard we have examined the Fifth Circuit’s opinion in Hinojos v. Railroad Retirement Board, 323 F.2d 227 (5th Cir.1963), applying Texas law to these facts: a couple commenced living together with an intent to be married; the man had a living wife, and the understanding was when a divorce occurred the couple would be ceremonially married; a divorce did occur, and thereafter the man put off the ceremonial marriage because of his illness, and he later died. The court declared this would make a valid common-law marriage. The court said there was no need to prove a new. agreement after the divorce from the first wife, nor was there anything “necessarily inconsistent with an agreement presently to enter into a common-law marriage and an intention later to have performed a ceremonial marriage.” In such a case the later marriage would be surplusage, as far as the law was concerned. Further, the agreement to be married need not be expressed; it ordinarily may be inferred from evidence establishing that the parties cohabited as husband and wife and held themselves out to the public as being married.
Based upon a reading of these cases, we have concluded that whether evidence of a planned ceremonial marriage indicates an imperfect present intent to marry, is a question of fact in Texas law. We are also mindful that in our present case, we do not owe to the trial court’s opinion the same deference that would ordinarily be accorded to a trial court’s decision based on credibility and evaluations of live testimony. The reviewing court can review the deposition evidence and reach an independent decision. Our evaluation of the totality of the deposition testimony convinces us that all of the elements of a common-law marriage, including a present intent to be married, were present just prior to the death of Mr. Jones.
The evidence appearing in the depositions is uncontradicted. The very next day after the divorce, the deceased came home. They resumed living together. They occupied the same bedroom and had sexual relations. Mrs. Jones was satisfied she had made her point. Apparently, her bizarre plan to get her husband’s attention had equally bizarre results: it succeeded, it accomplished its purpose. They continued to maintain the joint checking account. Deceased resumed support of the family. They lived together in the family home. The deposition witnesses testified that they continued to cohabit and behaved as husband and wife. There was no evidence at all to the contrary. This relationship went on, except for one brief interruption, for the nine months before Jones was killed. Deceased was working in Lake Charles, coming home on weekends, just as he had done throughout the marriage. He was home on the weekend before his death. One witness declared “the divorce changed nothing.”
It did change something, of course. The divorce judgment ended the Jones’ marriage, and they both knew it. We believe, however, that their, subsequent cohabitation as man and wife clearly evinced an agreement to be presently married. At the end, there was no evidence that they were uncertain about this marriage, or that they were going through a trial period, or that they thought of their marriage as conditioned on the happening of some future event. The elements of a common-law marriage were clearly established.
The decision of the trial court maintaining the exceptions of no right of action is reversed. Judgment is rendered overruling the exceptions. The case is remanded *1352 for further proceedings, costs of this appeal to be paid by appellees.
REVERSED AND RENDERED.