**Jimmy Carl SANDERS, Individually and Lila Sanders, Individually, also d/b/a Builders Tile Sales**

v.

**ROBERTSON-AMERICAN CORPORATION.**

No. 2–85–001–CV.

Court of Appeals of Texas, Fort Worth.

Oct. 17, 1985.

Danny D. Burns, Fort Worth, for appellant.

Law, Snakard & Gambill, Walker C. Friedman, Fort Worth, for appellee.

Before FENDER, C.J., and ASHWORTH and JOE SPURLOCK, II, JJ.

## OPINION

JOE SPURLOCK, II, Justice.

This is an appeal from the withdrawal of the case from the jury, the trial court then rendering judgment for appellee, Robertson-American Corporation. Robertson had filed suit upon a sworn account against appellants, Jimmy Carl Sanders and Lila Sanders d/b/a Builders Tile Sales.

We affirm.

By two points of error, appellants challenge the trial court's action in granting the directed verdict for appellee's claim on sworn account and disallowing appellants' counterclaims for timely rejection of the merchandise and misrepresentation. In their first point of error, appellants claim there is a justiciable fact issue on the amount of money, if any, they owe to Robertson-American. In their second point of error they complain that there remains a material fact question to be resolved in their counterclaim of timely rejection and misrepresentation.

Robertson-American was a manufacturer of ceramic tile. Early in 1979 it began to sell wall tile to the appellants' newly formed Builders Tile Sales (hereinafter "Builders Tile"). Appellant, Jimmy Carl Sanders, had been a tile contractor and continued to engage in that business. His wife devoted her time to wholesale sales to other contractors. Although Builders Tile claimed that it had been granted an exclusive distributorship of Robertson-American products in the Fort Worth area, there was no written agreement to that effect. By the summer of 1980, Builders Tile had purchased a truckload of tile every six to eight weeks and had a balance on its account of $15,053.04.

Robertson-American sold its manufacturing facility on August 11, 1980 and notified all its customers of the sale. Customers were offered a ten percent discount on their outstanding accounts and were advised that their orders would be filled for 120 days, also at a ten percent discount. Robertson-American sent each customer a list of other customers to enable them to deal with each other to balance their inventories. After the announcement of the sale of Robertson-American's plant, appellants made no payments on the Builders Tile account.

Robertson-American filed suit on its verified account. Thereafter, the parties agreed in writing regarding a plan to dispose of Builders Tile's inventory of Robertson-American tile. Builders Tile agreed that it expected "to receive approximately up to $5,000 gross from the sale of *all* of the subject items" and further that "in the event that the gross sales price exceeds the amount of $3,000, [appellant] stipulates *every aspect of said sale to have been commercially reasonable* and waives any cause of action or defense ... based upon the method of such sales or the commercial reasonableness of sale." (Emphasis added.) It is uncontroverted that Robertson-American resold the tile products and re-

ceived the gross amount of $5,398.50 for the tile products resold pursuant to this agreement.

Paragraph 4 of the Agreement states that Robertson-American would "transport all such items to San Diego, California ..." Paragraph 6 of the Agreement states in pertinent part that the original claims of Robertson-American based on the sworn account would be reduced pursuant to the subsequent resale of the items, but a claim would be made "for any and all incidental and consequential damages incurred in connection with such sale ... *including any and all shipping costs* and attorneys' fees in connection with this matter; ..." (Emphasis added).

There was testimony that some of the items shipped were not in good condition and that a great deal of the more saleable items were not included in the shipment. Robertson-American sold the products received for $5,398.50, which was above the "expected" amount. Shipping costs of $1,901.20 were deducted, resulting in a net off-set of $3,497.30. Accordingly, the case went to trial on amended petition on a stated account of $11,555.74.

Appellants answered the suit by a special denial that the account was not wholly just or true. They raised an affirmative defense claiming the merchandise was timely rejected and tendered back to Robertson-American, which failed to instruct as to the disposition of the merchandise. Builders Tile counterclaimed for $1,580.40 as reimbursement for expenses incurred in caring for and storing the rejected merchandise pursuant to the Uniform Commercial Code, TEX.BUS. & COM.CODE ANN. secs. 2.602(b)(2), 2.711(c) (Vernon 1968) and for damages for alleged misrepresentations in violation of the Deceptive Trade Practices—Consumer Protection Act (D.T.P.A.), TEX.BUS. & COM.CODE ANN. sec. 17.-46(b)(10), (b)(11) and (b)(23) (Vernon Supp. 1985). A partial summary judgment was entered in favor of Robertson-American denying the D.T.P.A. counterclaim because the statute of limitations had run. That judgment is not appealed.

In their first point of error, Builders Tile challenges the trial court's directed verdict on the sworn account suit, claiming that there remain material fact issues concerning the amount of money owed, apparently both on the verified account and on the agreement between the parties to resell the remaining inventory. The task of an appellate court in reviewing a directed verdict is to determine whether there is any evidence of probative force to raise fact issues on the material question presented. The evidence must be considered in the light most favorable to the party against whom the verdict was instructed. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978); *Davis v. Bartonville Water Supply Corporation*, 678 S.W.2d 297, 298 (Tex.App.—Fort Worth 1984, no writ). When reasonable minds may differ as to the truth of the controlling facts, the issue must go to the finder of fact. *Collora*, 574 S.W.2d at 68.

The record in this case shows that the account was properly pleaded and verified. As a result of appellants' sworn denial stating that the items in the account were not just and true, Robertson-American had the burden of proof in this case. *Rizk v. Financial Guardian Insurance Agency, Inc.*, 584 S.W.2d 860, 862 (Tex. 1979); *Avia Jet Management Corp. v. Aeroplace Service, Inc.*, 626 S.W.2d 325, 326–27 (Tex.App.—Tyler 1981, no writ). The essential elements of proof in an action on sworn account are (1) the sale and delivery of the merchandise and (2) that the amount of the account is just, *i.e.* that the prices charged are in accordance with the agreement of the parties or were reasonable, customary charges for such goods. *Steves Sash & Door Company v. WBH International*, 575 S.W.2d 355, 356 (Tex.Civ.App.—San Antonio 1978, no writ). In an action on account in which the amount owed is established by the best evidence available and the testimony on the amount owed is corroborated and uncontradicted, no issue of fact as to the amount owed is presented for the jury and the court may enter judgment for the full amount. *Querner v. George*, 336 S.W.2d 903, 904–05 (Tex.Civ.App.—San

Antonio 1960, writ ref'd n.r.e.); *Rogers v. Texas Industries, Inc.,* 328 S.W.2d 483, 485–86 (Tex.Civ.App.—Eastland 1959, no writ).

The account, through presentation of invoices, was proven up as just and true, with all lawful offsets, payments, and credits being applied. The amounts of the invoices were not challenged. Jimmy Sanders testified that the subject inventory had been received and that all of the merchandise conformed to the purchase orders of Builders Tile. He admitted that there were no discrepancies that should have been included in this account which were not properly handled by credit memo. At no time were the amounts of these invoices or credit memos brought into contention through testimony of any witness or by any exhibit. To the contrary, the appellants testified these amounts were entirely correct.

■ In their brief, appellants appear to contend that the failure of Robertson-American to inform them of the pending sale of their business created undetermined losses for them which should have been considered by a jury in determining the amount owed on the sworn account. We hold this claim is not directly relevant to the issues on the sworn account. *See WBH International,* 575 S.W.2d at 356. Even if this fact question was relevant, appellants failed to establish any duty of Robertson-American to notify them of the pending sale and, in fact, all the parties at trial stipulated that Robertson-American was under a legal duty under federal securities laws and regulations not to divulge this information. Thus it is clear that the account was just and owing in the amount of $15,053.04 as originally pleaded.

With regard to the resale of the inventory of tile on hand that resulted in the net set-off of $3,497.30 against the amount originally pleaded, Builders Tile appears to attack the commercial reasonableness of this resale by its discussion of the facts. Builders Tile implies that there remains a material fact issue as to the propriety of the $3,497.30 net set-off against the total amount due, without specifying exactly the nature of any other credit due it.

■ In reviewing the evidence, we find the resale of the merchandise was in strict conformity with the Agreement of the parties regarding the disposal of the remaining inventory. It was stipulated at trial that this agreement was binding on all of the parties. Paragraph 9 of the Agreement states that, if the gross sale were above $3,000, Builders Tile "stipulates every aspect of said sale to have been commercially reasonable and [appellants] waive any cause of action or defense … based upon the method of such sales or the commercial reasonableness of same." The gross sale price was $5,398.50. The net sale price and the subsequent deduction for freight from Fort Worth, Texas, to San Diego, California, were documented and presented to the trial court without objection. No evidence was produced that would show a deviation by Robertson-American as to the steps taken under the Agreement or the validity or accuracy of the receipts, credits, or invoices making up the net set-off of $3,497.30. Without objection to the amount or presentation of any contradictory evidence as to the reasonableness of the resale or the value of the tile resold, there was no material fact issue left to be decided. *See Querner,* 336 S.W.2d at 904–05. Point of error number one is overruled.

By its second point of error, Builders Tile contends that its countersuit was improperly withdrawn from the jury and the take nothing judgment entered against it was error. Appellants argue that material fact questions existed regarding the timely rejection of the last shipment of tile from Robertson-American and the expenses incurred by Builders Tile in the care of the rejected tile. Builders Tile also claims that there were justiciable fact issues concerning misrepresentation by Robertson-American.

■ In support of its misrepresentation claim, Builders Tile alleges that it had an exclusive distributorship of Robertson-American products and that it was deceived

and misled by the failure of Robertson-American to notify it of the impending sale of the manufacturing facility with the resulting termination of its supply of these products. However, appellants failed to establish any duty of Robertson-American to notify them of the sale. In fact, they stipulated at trial that Robertson-American was under a legal duty not to reveal this information because of federal securities laws and regulations. Builders Tile's original argument of misrepresentation under Deceptive Trade Practices Act was denied in a partial summary judgment and is not appealed. During the trial, appellants attempted to raise the issue of fraudulent inducement in a supplemental pleading but this was disallowed, without exception. We therefore overrule Builders Tile's contention that there remain material fact questions regarding Robertson-American's alleged misrepresentations because there remain no pleadings making that claim material in this case.

In further support of point of error two, Builders Tile pleaded that there had been a proper rejection of the goods. There is no evidence in the record, however, to support the submission of the issue to a jury. In order for a buyer to reject, there must be a failure of the goods or the tender of delivery to conform to the contract. Uniform Commercial Code, TEX. BUS. & COM.CODE ANN. sec. 2.601 (Vernon 1968). Lila Sanders testified that all of the tile received conformed to the orders, it was accepted, and ownership was exercised over it, and over 1,000 cartons were sold by Builders Tile to its customers. There was no suggestion that delivery of the tile to Builders Tile was not according to the contract. The last regular order (about $13,-000.00) was received prior to July 13, 1980. It was not until Lila Sanders learned of the sale of Robertson-American's manufacturing plant, about August 11, 1980, that she told its representative that she "wanted the inventory picked up in its entirety," ostensibly to include all of the tile ever purchased that had not been sold. Such a rejection falls short of the right of a buyer to reject on improper delivery as accorded

by the provisions of sec. 2.601. *Id.* One who exercises dominion over or alters goods in his possession thereby accepts the goods under the Texas Business and Commerce Code. *Explorers Motor Home Corporation v. Aldridge,* 541 S.W.2d 851, 853 (Tex.Civ.App.—Beaumont 1976, writ ref'd n.r.e.); *Bowen v. Young,* 507 S.W.2d 600, 603 (Tex.Civ.App.—El Paso 1974, no writ). After acceptance there can be no rightful rejection, and Builders Tile could not avail itself of the provisions of sec. 2.602(b)(2) and sec. 2.711(c) of the Texas Business and Commerce Code regarding reimbursement for expenses of care and custody of the rejected goods. TEX.BUS. & COM.CODE ANN. sec. 2.607(b) (Vernon 1968). Furthermore, Builders Tile's trial counsel told the trial court "there was no rightful rejection" and essentially abandoned such claim during the hearing on the motion for directed verdict. Point of error number two is overruled.

By cross-point, appellee has encouraged this court to assess a penalty of ten percent of the amount in dispute as additional damages pursuant to TEX.R.CIV.P. 438. Before an appellate court may assess damages under rule 438, it must find that the appeal was taken for delay and that there was no sufficient cause. In order for the Court of Appeals to impose this penalty, the record must clearly show that at the time the appeal was perfected the appellant had no reasonable ground to believe that the judgment would be reversed. *Bainbridge v. Bainbridge,* 662 S.W.2d 655, 657 (Tex.App.—Dallas 1983, no writ); *Beago v. Ceres,* 619 S.W.2d 293, 295 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ). The reviewing court is required to inspect the entire record and notice any errors, whether assigned or not, and assess damages only in the event that the appeal was not taken in good faith, but for delay only. *State v. Dikes,* 625 S.W.2d 18, 21 (Tex.App.—San Antonio 1981, no writ).

In the present case, the points of error in the appeal were devoid of any legal merit and appellants failed to provide any

specific legal authority to support its appeal. Appellants also failed to specifically point out any material fact issue that as a matter of law would be in contradiction to the directed verdict. After reviewing the entire record, this Court finds no error on the part of the trial court. We find from the entire record before us that appellants had no reasonable expectation that the trial court judgment would be reversed at the time they perfected their appeal and such appeal was thus groundless, frivolous and brought only for delay and to cause injury to appellee. *See Beago,* 619 S.W.2d at 295–96.

In their cross-point, appellee claims that the amount "in dispute" against which this Court should assess the ten percent penalty under TEX.R.CIV.P. 438 is the sum of the amount in controversy (*i.e.* the amount pleaded on the sworn account), plus the amount of interest accrued from the due date to the date of judgment as awarded by the trial court, plus the reasonable attorneys' fees for both the trial and the appeal as awarded by the trial court, plus post-judgment interest at the legal rate of 10.80 percent on the aggregate of the foregoing damages and legal fees. This Court holds, however, that the amount "in dispute" under TEX.R.CIV.P. 438 is limited to the principal amount of the judgment appealed from (*i.e.* the damages but not the interest or costs accrued), plus the post-judgment legal rate of interest as determined by the trial court which has accrued to the date of the appellate decision. *See Hennigan v. Hennigan,* 677 S.W.2d 495, 496 (Tex.1984). The amount in dispute in this case is the trial court's award on the sworn account of $11,555.74, plus the legal post-judgment interest of 10.84 percent, as set by the trial court in its judgment, accruing from the date of judgment, October 16, 1984. This totals $12,808.38. Therefore, this Court orders appellants to pay $1,280.84 as damages to appellees for the unnecessary delay caused by taking this appeal.

The judgment of the trial court is affirmed with additional damages assessed against the appellants in the sum of $1,280.84.