Robert R. SCHWARTZ, Laura Ann Schwartz Franks, Charles W. Schwartz, and the Estate of Dorothy P. Schwartz, Deceased, Appellants,

v.

PRAIRIE PRODUCING COMPANY, INC., Appellee.

No. 01–91–00491–CV.

Court of Appeals of Texas, Houston (1st Dist.).

June 18, 1992.

On Denial of Rehearing Aug. 20, 1992.

Rehearing Denied Oct. 1, 1992.

Robert R. Schwartz, Tyler, Don A. Weitinger, Houston, for appellant.

Carroll Martin, Steve Selby and Charles G. King, Scott, Douglass & Luton, Houston, for appellee.

Before SAM BASS, COHEN and DUNN, JJ.

OPINION

SAM BASS, Justice.

This appeal is from an instructed verdict construing oil, gas, and mineral leases. We reverse and remand for a new trial.

Appellants, the Schwartzes, own mineral interests in two tracts of land on which they executed eight leases that were assigned to appellee, Prairie Producing Company, Inc. Prairie pooled the tracts into two separate gas units that include three producing gas wells. Each well produces sour gas, which is gas that contains hydrogen sulfide.

Prairie contracted with Cities Service Company for delivery of sour gas at the wellhead. Cities Service transported the sour gas to its processing facility, where sulphur was recovered from the hydrogen sulfide gas. Cities Service kept 15 to 20 percent of the sulphur produced, and returned the remaining sulphur to Prairie. Prairie sold the sulphur to third parties.

Prairie tendered to the Schwartzes one dollar per long ton of sulphur extracted from the gas, the royalty provided in the lease for sulphur. However, the Schwartzes refused the payments and sued, claiming that under the gas clause of the lease, they were entitled to recover their percentage interest in one-fourth of Prairie's net proceeds from the sales of sulphur recovered from the hydrogen sulfide gas. Prairie claimed that it had correctly paid royalties under the sulphur royalty clause.

The parties disagree on which royalty provision applies. The Schwartzes contend that they are entitled to royalties on hydrogen sulfide gas under subsection 3(b)(1), the gas clause, because hydrogen sulfide is a gas that was sold to Cities Service. Prairie claims that subsection 3(c), the sulphur clause, applies because it was sulphur mined and marketed that was sold to Cities Service and to third parties.

In the first proceeding in the trial court, the court granted summary judgment for Prairie. This Court reversed the summary judgment and remanded the case to the trial court. *Schwartz v. Prairie Producing Co.*, 727 S.W.2d 289 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). In that case, each of the three members of the panel wrote separate opinions. The "majority" opinion, written by Justice Cohen, held that the leases require payment under the gas clause, and the trial court erred by holding payment should be made under the sulphur clause. *Id.* at 292. Thus, he reversed and remanded the cause to the district court. *Id.* at 293.

Justice Dunn concurred only in the judgment. She found the language of the leases to be ambiguous, and was unwilling to deny either side a trial. "I cannot declare with confidence, based on this record, that there is no disputed issue of fact and that one side or the other is entitled to judgment as a matter of law." *Schwartz*, 727 S.W.2d at 293.

Finally, Justice Bass dissented. He found that sulphur extracted from hydrogen sulfide gas should be paid under the sulphur clause of the lease. *Schwartz*, 727 S.W.2d at 293. He, therefore, would have affirmed the summary judgment of the trial court. *Id.*

On remand, the trial court held a jury trial on the merits. After both parties rested their cases, the court granted Prairie's motion for instructed verdict. The court rendered judgment that the Schwartzes take nothing on their claims for additional royalties.

■ In their first and second points of error, the Schwartzes contend that the trial court erred in granting Prairie's motion for instructed verdict and in sustaining one of Prairie's special exceptions to the Schwartzes' petition, because the Schwartzes were entitled to payment under

the gas clause based upon the doctrine of the law of the case.

The law of the case is a principle under which determination of law questions will generally be held to govern a case throughout all the subsequent stages, including a retrial and subsequent appeal. *Trevino v. Turcotte*, 564 S.W.2d 682, 685 (Tex.1978). The Schwartzes assert that this doctrine should be applied because the same issue before this Court today was decided in the previous appeal: whether the gas clause or the sulphur clause applies to payments for hydrogen sulfide gas.

However, a majority of this Court did not decide which of the two clauses applies. Justice Cohen was of the opinion that the gas clause applied. Justice Bass decided that the sulphur clause applied. Justice Dunn, while concurring in the result, found the issue was a question of fact that this Court should not decide. With all due respect to Justice Cohen, we hold that concurrence in the result is not sufficient to make the determination of the law by only one judge the law of the case.

The first and second points of error are overruled.

 In the third point of error, the Schwartzes assert that the trial court erred in granting an instructed verdict because the leases unambiguously provide that hydrogen sulfide gas is compensable under the gas clause. Alternatively, in the fourth point of error, they claim that, even if the leases are ambiguous, the evidence presented at trial raised a fact issue concerning which clause governs payment for hydrogen sulfide gas. The disputed provision of each lease is identical. It refers to the Schwartzes as "lessor" and to Prairie as "lessee" and provides:

3. As royalty, lessee covenants and agrees ... (b) To pay lessor on gas and casinghead gas produced from said land (1) when sold by lessee, ¼ of the amount realized by lessee, computed at the mouth of the well, or (2) when used by lessee off said land or in the manufacture of gasoline or other products, the market value, at the mouth of the well, of ¼ of such gas and casinghead gas; (c)

To pay lessor on all other minerals mined and marketed or utilized by lessee from said land, one-tenth either in kind or value at the well or mine at lessee's election, except that on sulphur mined and marketed the royalty shall be one dollar per long ton.

In reviewing an instructed verdict, the appellate court must determine whether there is any evidence of probative force to raise fact issues on the material questions presented. *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex.1978). The court considers all of the evidence in a light most favorable to the party against whom the verdict was instructed, disregards all contrary evidence and inferences, and gives the losing the party the benefit of all reasonable inferences arising therefrom. *Id.* Every reasonable meaning deducible from the evidence is to be indulged in the nonmovant's favor. *Trenholm v. Ratcliff*, 646 S.W.2d 927, 931 (Tex.1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper, and the issue must go to the jury. *White v. Southwestern Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex.1983).

Prairie's expert witnesses testified about the natures of hydrogen sulfide and sulphur. Larry Minter, a geologist with experience in hard mineral production, stated that hydrogen sulfide is a colorless gas. Mike Brown, a senior land man and land manager, said sour gas, which contains hydrogen sulfide, is "gas" within the meaning of the leases in dispute and within the meaning of Tex.Nat.Res.Code Ann. § 86.-002 (Vernon 1978). Glenn Perry, a petroleum engineer, testified that sulphur does not exist at the wellhead except in trace quantities. All the sulphur that is recovered is obtained at the processing plant. He further stated that sulphur is contained in the hydrogen sulfide molecule. However, he admitted that "hydrogen sulfide" is not a synonym for "sulphur."

Prairie's experts also testified to industry custom regarding the classification of a hydrogen sulfide gas well. Bill McCain, a petroleum engineer and gas processing expert, testified that a sour gas well can be

considered a "mine," but he conceded that he had never called a sour gas well a mine in his professional career. He further admitted that a sour gas well is not a *sulphur* mine. Mr. Minter testified that the sulphur Prairie sells is "sulphur mined and marketed," so that it would fall under the sulphur provisions of the leases. However, he admitted that in the terminology of the industry, sulphur produced from hydrogen sulfide was considered "recovered sulphur," not "mined sulphur."

The Schwartzes put on Leonard Holland as their expert. He testified about gas processing agreements generally, and attempted to testify about industry custom concerning the sale of hydrogen sulfide gas. However, the court would not allow his industry custom testimony. In a bill of exception, Holland stated that this was the first time in his professional career that he had heard of a producer calling a gas well a sulphur mine, and attempting to pay one dollar per ton for sulphur.

Clearly, there is evidence of probative force to raise a fact issue on the material question presented—that is, which lease clause applies. Further, the evidence does not resolve the ambiguity in the lease. As Justice Dunn wrote in her concurring opinion on the appeal from the summary judgment: "I am unwilling to deny either side a trial, based on this ambiguous language that has confounded three able federal judges, as well as three members of this panel, and that presents an important question of first impression in Texas." *Schwartz*, 727 S.W.2d at 293; *First Nat'l Bank v. Pursue Energy Corp.*, 784 F.2d 659 (5th Cir.1986) ("Pursue I"), *vacated by*, 799 F.2d 149 (5th Cir.1986) ("Pursue II").

We hold the pertinent provisions of the lease to be ambiguous under the evidence in this case. Thus, the third point of error is overruled. However, we sustain the fourth point of error and hold that the instructed verdict was improper where probative evidence supporting the Schwartzes' arguments was adduced at trial.

We reverse the trial court's judgment and remand this cause for a new trial.

COHEN, Justice, concurring.

I agree with the opinion and the judgment that the sulphur clause has not been shown to control, as a matter of law, as the trial judge ruled.

In the first appeal of this case, there was no summary judgment evidence before us of industry practice. Without such evidence, I voted to hold that as a matter of law, the gas clause controlled. Now that the parties have produced evidence at trial of industry practice, it appears the contract is ambiguous. Because industry experts cannot agree which clause controls, a fact issue is presented for the jury. I believe the best way to resolve this dispute is to allow a full trial to a verdict, followed by any appropriate rulings on post-trial motions. The issue will then be before this Court a third time, and the Texas Supreme Court will have a second chance to rule on the meaning of a troublesome clause in a widely used standard form lease. *See First Nat'l Bank v. Pursue Energy Corp.*, 799 F.2d 149 (5th Cir.1986) (construing the identical language in a Mississippi lease and holding that payment was required under the gas clause). This issue of contract construction needs to be settled by the Texas Supreme Court so that the industry and landowners will know whether the gas clause or the sulphur clause controls, or whether a jury must decide that issue on a case by case basis.

## OPINION ON MOTION FOR REHEARING

SAM BASS, Justice.

We deny both appellants' and appellee's motions for rehearing. We reverse the judgment of the trial court and remand the cause for a new trial. The majority remains with its opinion issued on June 18, 1992.

COHEN, J., dissenting.

COHEN, Justice, dissenting on Motion for Rehearing.

This hard case confounds us again. Of course, we are in good company, along with

a distinguished federal court of appeals. *First Nat'l Bank v. Pursue Energy Corp.*, 784 F.2d 659 (5th Cir.1986), *vacated by,* 799 F.2d 149 (5th Cir.1986). *Pursue* involved the same legal issue, the identical lease provision, and comparable controversy on the panel. At last, however, that court decided the issue on the merits, something we have not yet done in two attempts.

The parties agree on little, except that 1) this lease is not ambiguous, 2) it needs to be authoritatively construed by the Texas Supreme Court, and 3) they do not want a new trial to determine which clause applies. I agree with both of them on these three points. Thus, I vote to reverse the judgment, to hold that royalties are payable under the gas clause, subsection 3(b)(1), and to remand the cause for trial on damages for breach of contract, for conversion, and for all other claims that appellants assert. My reasons are stated in my opinion on original submission. *See Schwartz I,* 727 S.W.2d 289, 290–93 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.); *see also* TEX.NAT.RES.CODE § 86.002(8) (Vernon Supp.1992) (defining sour gas as "gas"). I would sustain points of error 3, 5 through 17, and 19 through 21. I would overrule points of error 1, 2, 4, and 18 because I agree with appellee that the law of the case doctrine does not apply here. It does not apply because, on original submission in *Schwartz I,* I was able to garner only one vote, mine, for my position. Now, on rehearing five years later, that is still the case. At least, I have been able to hold my own.

The majority's decision ordering a new trial to determine which lease clause applies is unpopular with the parties, to say the least. Schwartz says:

The only extrinsic fact that is relevant is not in dispute. Hydrogen sulfide is produced at the well head and sulfur is not produced at the well head. Hydrogen sulfide is gas and hydrogen sulfide is not a synonym for sulfur.... Both parties have argued that custom and usage is not material.... This court is forcing the parties to try this case on an ambiguity theory that both parties contend is incorrect.... It is respectfully submitted that neither party has any clue as to what type of evidence to present, what objections to make, or what issues to present to the jury. The vast majority of the evidence that was presented by both sides was not disputed.

Prairie Producing Company is not happy, either. It says:

The court's opinion ... will result in a retrial of this case. This is most unfortunate because the case begs for resolution by our supreme court, an unlikely event based on this court's decision to remand....

At trial, the parties agreed at the close of the evidence that there was no disputed fact issue except reasonable attorney's fees. Appellants did not propose or submit a jury issue asking what industry custom is or which royalty clause applies, either in the pretrial order or at the close of the evidence. Both sides moved for an instructed verdict. On this record the trial judge properly rendered an instructed verdict.... The facts the parties developed at trial were offered as context for interpreting the lease, not as extrinsic evidence to create or explain an ambiguity.... Appellants have never cited a single authority that would admit evidence of industry custom on these facts.... Both sides were surprised by the court's finding that the lease is ambiguous and there is a fact issue to be resolved.

Let us have mercy on these parties. They have suffered enough. The public interest, as well as the private interest of the litigants, is best served by a decision on the merits because a finding that the lease is ambiguous sets no precedent. It will lead to litigation in many other cases. Under these circumstances, any decision we could reach is better than none at all.

Prairie is right when it says this case begs for resolution by the Texas Supreme Court. I was surprised and disappointed when the supreme court refused to decide this issue in 1987, on writ of error from *Schwartz I.* Clauses like this have been used in Texas mineral leases for at least 60

years. *See Sun Oil Co. v. Madeley*, 626 S.W.2d 726, 727–28 (Tex.1981). Schwartz declares that there are tens of thousands of such leases in force in Texas, and it is obviously no coincidence that the Mississippi lease construed by the Fifth Circuit in *Pursue* is identical to this one. The widespread use of this particular provision is suggested by the fact that these leases are printed (not typed) on paper prominently displaying the name "Pound Printing and Stationery Company."

This is an important case. Although I originally joined the majority opinion, I now think we should resolve this issue on its merits. Then, the supreme court should decide who is right.

I respectfully dissent.