**Opinion filed March 29, 2012**



**In The**

# Eleventh Court of Appeals

_____

**No. 11-10-00123-CV**

_____

**C.R. JONES, Appellant**

**V.**

**DALE B. CLEM, BOBBY CLEM AND RICKY CLEM,
D/B/A B. R. & D. FARMS, Appellees**

**On Appeal from the 42nd District Court**

**Coleman County, Texas**

**Trial Court Cause No. 4602**

**M E M O R A N D U M   O P I N I O N**

Dale B. Clem, Bobby Clem and Ricky Clem, d/b/a B. R. & D. Farms, sued C.R. Jones and Norma L. Smith to recover for production royalties that should have been paid to them in connection with their mineral interest in a twenty-acre tract of land in Coleman County. The trial court granted appellees' motion for a directed verdict against Jones and Smith and entered judgment against them both. Jones has perfected an appeal from that judgment. Smith did not perfect an appeal. We affirm.

*Background Facts*

J.A. (Adrian) Evans and his wife, Leola Evans, owned the mineral interest in a twenty-acre tract of land in Coleman County. The mineral interest was subject to an oil and gas lease. During bankruptcy proceedings filed by J.A. and Leola, the trustee in bankruptcy sold the interest to appellees and delivered a quitclaim deed to them dated December 28, 1990. The quitclaim deed was recorded in the Coleman County Clerk's office on January 11, 1991.

Ricky Clem testified that, except for recording the quitclaim deed, the appellees did not notify anyone that they had purchased the interest. Nevertheless, in January or February 1991, appellees began to receive royalty payments from the purchaser, Western Gas. They continued receiving payments through 1999, and then the payments stopped.

Ricky also testified that, when the payments stopped, the appellees assumed that the production had ceased and the well had been shut down.

Jones testified that the lease was assigned to him in September 2002 and that his predecessor subsequently sent him what Smith called a division order. Adrian Evans was shown as the owner of a 0.1250000 royalty interest. When he sent out the first checks after he took over the lease, Jones mailed a royalty check to Adrian; it went to Smith, Adrian's daughter.[1] Smith informed Jones that Adrian was deceased and that she was the executor as well as the sole beneficiary of Adrian's estate. Smith told Jones to send her the royalty checks. Jones did not recall what documentation Smith sent him, but after he received it, he began sending the royalty checks to her that eventually totaled over $40,800.

In June 2008, appellees learned that they were being sued for unpaid taxes on the property interest. Appellees went to the tax office in Coleman County, and it was then that they were told that the well was still producing and that they owed taxes on the interest. Appellees paid those taxes. Subsequently, appellees located the well. The lease had been transferred several times before eventually being transferred to Jones. Appellees did not know Jones, but after some investigation, they were able to locate him.

Appellees explained to Jones that they had previously received royalty payments and showed Jones the documentation of their ownership. Jones showed appellees a list that showed the payments that he had made to Smith. Jones did not pay appellees any of the payments that he had paid out to Smith.

---

[1]Smith is also Dale's and Ricky's maternal aunt; Adrian Evans was their maternal grandfather.

Appellees filed a lawsuit against Jones and Smith. Ultimately, the trial court granted appellees' motion for directed verdict and entered judgment against Jones for the sum of $27,169.38 and against Smith for $11,376.15. The trial court also granted judgment in favor of Jones against Smith in the amount of $27,169.38. The trial court denied Jones's motion for directed verdict.

## *Issues on Appeal*

Jones presents us with a single issue on appeal. That single issue, "Did the trial court err in rendering judgment for Plaintiff/Appellee against Defendant/Appellant Jones," contains four subparts, three of which deal, in one way or another, with the appellees' failure to furnish title documents to Jones. The final subpart addresses sufficiency of the evidence to support the directed verdict in favor of appellees.

## *Standard of Review*

In reviewing a trial court's directed verdict, the appellate court examines the evidence in the light most favorable to the person suffering an adverse judgment and decides whether there is any evidence of probative value to raise an issue of material fact on the question presented. *Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 217 (Tex. 2011). If the appellate court finds that there is any evidence of probative value that raises a material fact issue, then the judgment must be reversed and the case remanded for the jury's determination of that issue. *Szczepanik v. First S. Trust Co.*, 883 S.W.2d 648, 649 (Tex. 1994); *White v. Sw. Bell Tel. Co.*, 651 S.W.2d 260, 262 (Tex. 1983); *Collora v. Navarro*, 574 S.W.2d 65, 68 (Tex. 1978).

## *Discusson*

Jones argues that the trial court erred because the appellees were required by Paragraph 7 of the lease to provide him with notice of any change in ownership of the property or of the right to rentals or royalties. He contends that they should have taken nothing because the lease terms provided him an affirmative defense to being charged with constructive notice of a duty to pay royalties to the appellees. Our analysis of this issue requires us to interpret Paragraph 7 of the lease. When a contract is not ambiguous, the construction of the written instrument is a question of law for the court. *See Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983); *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968); *Myers v. Gulf Coast Minerals Mgmt. Corp.*, 361 S.W.2d 193, 196 (Tex. 1962). We review the trial court's legal conclusions de novo. *See Barber v. Colorado Indep. Sch. Dist.*, 901 S.W.2d 447, 450 (Tex. 1995). We give

terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *W. Reserve Life Ins. Co. v. Meadows*, 261 S.W.2d 554, 557 (Tex. 1953). This court will enforce the unambiguous document as written. *Sun Oil Co. (Del.) v. Madeley*, 626 S.W.2d 726, 728 (Tex. 1981).

Paragraph 7 of the lease agreement unambiguously states:

> The rights of either party hereunder may be assigned in whole or in part and the provisions hereof shall extend to the heirs, executors, administrators, successors and assigns, but no change or division in ownership of the land, rentals or royalties, however accomplished, shall operate to enlarge the obligations or diminish the rights of lessee. No such change or division in the ownership of the land, rentals or royalties shall be binding upon lessee for any purpose until such person acquiring any interest has furnished lessee with the instrument or instruments, or certified copies thereof, constituting his chain of title from the original lessor.

Change in ownership clauses that relieve a lessee from liability for the mispayment of royalty or delay rentals, when the mispayment is caused by a change in ownership and no notice is given to the lessee of such change, have been upheld and enforced. *Cassity v. Smith*, 193 S.W.2d 991 (Tex. Civ. App.—Texarkana 1946, writ ref'd). Where such a provision is included in the lease, the lessee is not charged with constructive notice from the record of a subsequent transfer by the lessor. *Brandt v. Roxana Petroleum Corporation*, 29 F.2d 980 (5th Cir. 1929); *Jackson v. United Producers' Pipe Line Co.*, 33 S.W.2d 540 (Tex. Civ. App.—Fort Worth 1930, writ ref'd).

Appellees concede that Western Gas, the lessee at the time that appellees took ownership of the royalty interest, could have invoked this provision to "act as though no such instruments ha[d] been executed" until it was served with written notice thereof. *Jackson*, 33 S.W.2d at 544. However, Western Gas apparently waived this right when it somehow learned that appellees had purchased the royalty interest and began paying them the royalties, even though appellees had given no formal notice.

Appellees argue that Jones was not entitled to notice under Paragraph 7 because it applies only when there has been a "change or division" in the ownership of the land during the lease term, and there has been none since Jones took over the lease. We agree. There was no change of ownership during Jones's tenure as lessee. To the contrary, the appellees were the owners of the royalty interest at the time Jones took the lease and at all times since. Appellees'

ownership was a matter of public record when Jones acquired the lease; appellees' deed was recorded in the Coleman County Clerk's office. Jones does not dispute this fact. Appellees were already in the chain of title when Jones took the lease, and their ownership is something that would have been easily discoverable by searching the county clerk's records or by obtaining a title opinion. As appellees have pointed out, this is something that Jones had a statutory duty to do in order to provide notice to the payees of the existence of a new payor. TEX. NAT. RES. CODE ANN. § 91.407 (West 2011).

To read the lease provision as Jones asks us to do would be contrary to the policies underlying the doctrine of constructive notice. That doctrine is applied when a person knows where to find the relevant information, and had a duty to find that information, but failed to seek it out. *See Little v. Smith*, 943 S.W.2d 414, 421 (Tex. 1997). Under the facts of this case, we find, as a matter of law, that Jones did not establish that Paragraph 7 of the lease constituted an affirmative defense to the appellees' claims. Subparts A, B, and C of Jones's issue are overruled.

In subpart D of Jones's issue, he argues that there was no evidentiary support in the record upon which the trial court could base its directed verdict. Alternatively, Jones argues that the directed verdict was so against the great weight and preponderance of the evidence as to be unjust. We note that Jones's alternative argument addresses factual sufficiency, which has no place in the review of a directed verdict. We will address Jones's argument using the standard of review previously set out in this opinion. We must examine the record in the light most favorable to Jones and determine whether there is any evidence of probative force that raises a material fact issue. *See Exxon*, 348 S.W.3d at 217.

The undisputed evidence is that the appellees did not personally furnish any documents to any lessee until 2008, when they showed Jones the documents reflecting that they had purchased the interest in late 1990. However, the deed to their interest was on file with the county clerk when Jones took the leasehold interest from Gene Worthington in 2002; it had been on file since 1991, shortly after the appellees purchased the interest. The filing of a deed is notice to all persons. *Alkas v. United Sav. Ass'n of Tex., Inc.*, 672 S.W.2d 852, 856 (Tex. App.—Corpus Christi 1984, writ ref'd n.r.e.); *First Sav. & Loan Ass'n of El Paso v. Avila*, 538 S.W.2d 846, 849 (Tex. Civ. App.—El Paso 1976, writ ref'd n.r.e.). It is a conclusive presumption of law that the proper and legal recording of a deed in the county where the land lies is constructive notice of the recorded deed's existence. *White v. McGregor*, 50 S.W. 564 (Tex. 1899); *Quarles v. Hardin*,

5

249 S.W. 459, 462 (Tex. Comm'n App. 1923, judgm't adopted). The doctrine of constructive notice creates an irrebuttable presumption of actual notice of certain matters. *See HECI Exploration Co. v. Neel*, 982 S.W.2d 881, 887 (Tex. 1998); *Noble Mortgage & Invs., LLC v. D & M Vision Invs., LLC*, 340 S.W.3d 65, 76 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Jones was charged with constructive notice of appellees' right to be paid royalties. His reliance on the purported "division of interest" or "division order" document was misplaced. First, the document contained a disclaimer, on its face, of any warranty that it was correct or reflected record title to the lease. Second, in order to rely upon a division order, Jones had the obligation to submit it to the payees for signature. TEX. NAT. RES. CODE ANN. § 91.402(c)(1) (West 2011). The document relied upon by Jones was not signed by any party and was, thus, not a division order at all. TEX. NAT. RES. CODE ANN. § 91.401(3) (West 2011) ("'Division order' means an agreement signed by the payee directing the distribution of proceeds . . . ."). The facts established as a matter of law that Jones had constructive notice of appellees' interest. Considering the evidence in the light most favorable to Jones, we hold that there was no probative evidence raising an issue of material fact and that the trial court did not err in directing a verdict in favor of appellees. Subpart D of Jones's issue is overruled.

The judgment of the trial court is affirmed.

PER CURIAM

March 29, 2012

Panel consists of: Wright, C.J.,
McCall, J., and Kalenak, J.